IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY and
SIERRA CLUB,

        Plaintiffs,

v.                              CIVIL ACTION NO. 3:12-cv-0785

ELK RUN COAL COMPANY, INC.,
and ALEX ENERGY, INC.

        Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

### INTRODUCTION

1. This is a citizen suit for declaratory and injunctive relief and civil penalties against Defendants Elk Run Coal Company, Inc. ("Elk Run") and Alex Energy, Inc. ("Alex") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. (hereinafter "SMCRA") at their surface coal mines in Boone and Nicholas Counties, West Virginia.

2. Plaintiffs allege that Elk Run has discharged and continues to discharge pollutants into waters of the United States, namely Laurel Creek and its tributaries, including Mudlick Fork and Stolling Fork, in violation of the narrative water quality standards for biological stream protection incorporated into its West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permits WV1003968 and WV1013441 issued pursuant to § 402 of the Clean Water Act. Plaintiffs further allege that Elk Run's violations of those narrative standards also violate the performance standards under SMCRA and the terms and conditions of its West

Virginia Surface Mining Permits S5075-86 and S5057-92.

3. Plaintiffs also allege that Alex has discharged and continues to discharge pollutants into waters of the United States, namely Robinson Fork, its tributaries, and Twentymile Creek downstream from Robinson Fork, in violation of the narrative water quality standards for biological stream protection incorporated into its WV/NPDES Permits WV1015362, WV1012401, and WV1019601 issued pursuant to § 402 of the Clean Water Act. Plaintiffs further allege that Alex's violations of those standards also violate the performance standards under SMCRA and the terms and conditions of its West Virginia Surface Mining Permits S3013-91, S3005-98, and S3007-92.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (CWA citizens' suit provision), and 30 U.S.C. § 1270 (SMCRA citizens' suit provision).

5. On January 11, 2012, Plaintiffs gave notice of the violations and its intent to file suit to the Defendants, the United States Environmental Protection Agency ("EPA"), the Office of Surface Mining, Reclamation, and Enforcement ("OSMRE"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)A).

6. More than sixty days have passed since notice was served. EPA, OSMRE and/or WVDEP have not commenced or diligently prosecuted a civil or criminal action to redress the violations. Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the January 11, 2012 notice letter.

7. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District.

## PARTIES

8. Elk Run and Alex are West Virginia corporations engaged in the business of mining coal.

9. Elk Run and Alex are persons within the meaning of § 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and § 701(19) of SMCRA, 30 U.S.C. § 1291(19).

10. Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization incorporated in Ohio. Its principal place of business is in Huntington, West Virginia. It has approximately 1,500 members. Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

11. Plaintiff West Virginia Highlands Conservancy, Inc., is a nonprofit organization incorporated in West Virginia. It has approximately 2,000 members. It works for the conservation and wise management of West Virginia's natural resources.

12. Plaintiff The Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 2,000 members who reside in West Virginia and belong to its West Virginia Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and

to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

13. Plaintiffs have members—including but not limited to Cindy Rank, James Tawney, and Chuck Nelson—who use, enjoy, and benefit from the water quality in Laurel Creek and/or Twentymile Creek and the natural resources associated with those streams. They would like to recreate in areas downstream from the portion of the stream into which Defendants' mines discharge pollutants harmful to aquatic life, including total dissolved solids, conductivity and sulfate. Excessive amounts of these pollutants degrade the water quality of Laurel Creek, Twentymile Creek and their tributaries, make the water aesthetically unpleasant and environmentally undesirable, and impair its suitability for aquatic life. Because of this pollution, Plaintiffs' members refrain from and/or restrict their usage of Laurel Creek, Twentymile Creek, their tributaries, and their associated natural resources. As a result, the environmental, health, aesthetic, and recreational interests of these members are adversely affected by Defendants' excessive discharges of these other pollutants into Laurel Creek, Twentymile Creek and their tributaries from their mining operations in violation of their NPDES and SMCRA permits. If Defendants' unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of the limits in Defendants' permits.

14. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

15. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as an NPDES Permit issued by the EPA or an authorized state pursuant to Section

402 of the CWA, 33 U.S.C. § 1342.

16. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

17. Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water.

18. The Administrator of EPA authorized WVDEP, pursuant to Section 402(a)(2) of the Act, 33 U.S.C. § 1342(a)(2), to issue NPDES permits on May 10, 1982. 47 Fed. Reg. 22363. The applicable West Virginia law for issuing NPDES permits is the Water Pollution Control Act ("WPCA"), W.V. Code § 22-11-1, et seq.

19. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

20. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

21. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d).

22. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

23. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009. See 40 C.F.R. § 19.4.

24. Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

25. Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from OSMRE or from an approved state regulatory authority.

26. At all relevant times, the State of West Virginia has administered an approved surface mining regulatory program under SMCRA. See 30 C.F.R. § 948.10.

27. Among the performance standards mandated by SMCRA and the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") is that "[d]ischarge from areas disturbed by . . . mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 30 C.F.R. §§ 816.42 and 817.42; 38 C.S.R. § 2-14.5.b.

28. The legislative rules promulgated under the WVSCMRA provide that, as a general condition of all surface mining permits issued under the WVSCMRA, the permittee must comply with all applicable performance standards. 38 C.S.R. § 2-3.33.c.

29. Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely

affected to bring an action in federal court to compel compliance with SMCRA against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

30. Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

31. WVDEP is the agency in the State of West Virginia that administers that State's CWA and SMCRA programs, and issues WV/NPDES Permits and WVSCMRA Permits.

## FACTS

### Elk Run

32. In 1991, WVDEP transferred West Virginia Surface Mining Permit No. S5075-86 to Elk Run for its White Castle No. 1 Surface Mine in Boone County, West Virginia. The permit was renewed in 2001 and 2006 and is still in effect. The White Castle No. 1 Surface Mine has seven valley fills that drain into Laurel Creek, a tributary of the Big Coal River.

33. Also in 1991, WVDEP transferred to Elk Run WV/NPDES Permit No. WV1003968, which limits discharges from the White Castle No. 1 Surface Mine from Outfalls 001, 002, 003, 004 and 017 into Laurel Creek. This permit was renewed in 1997, 2002 and 2007 and is still in effect.

34. In 1994, WVDEP issued West Virginia Surface Mining Permit No. S5057-92 to Elk Run for its East of Stollings Surface Mine in Boone County, West Virginia. The permit was renewed in 2004 and 2009, and is still in effect. This Mine has seven valley fills which drain into Stolling Fork and Mudlick Fork, and then into Laurel Creek, a tributary of the Big Coal River. These discharges are upstream from the discharges from the White Castle No. 1 Surface Mine.

35. Also in 1994, WVDEP issued to Elk Run WV/NPDES Permit No. WV1013441, which limits discharges from the East of Stollings Surface Mine from Outfalls 001, 002 and 003 into Mudlick Fork and Outfalls 004, 005, 006 and 007 into Stolling Fork. This permit was renewed in 1999, 2003 and 2007 and is still in effect.

36. Part C of both WV/NPDES Permit Nos. WV1003968 and WV1013441 incorporates by reference 47 CSR § 30-5.1.f, which provides that: "The discharge or discharges covered by a WV/NPDES permit are to be of such quality so as not to cause violation of applicable water quality standards adopted by the Department of Environmental Protection, Title 47, Series 2."

37. WVDEP's narrative water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

38. After mining began, and from 2006 to the present, Elk Run has measured levels of conductivity and sulfate in streams in the Laurel Creek watershed that are downstream of its mining operations and that significantly exceed the levels of those pollutants in baseline measurements in that watershed prior to mining. Conductivity levels have usually exceeded 1,000 μs/cm and have frequently exceeded 3,000 μs/cm.

39. In 2009 and 2010, Elk Run conducted Whole Effluent Toxicity (WET) tests in streams in the Laurel Creek watershed that measured acute and chronic toxicity levels that exceed EPA and WVDEP guidelines for the protection of aquatic life.

40. High levels of dissolved solids, including sulfates, measured as conductivity, are a primary cause of water quality impairments downstream from mining discharges. Substantial and increasing aquatic life impacts occur as conductivity increases beyond 300 μs/cm.

41. In 2007, EPA measured a West Virginia Stream Condition Index (WVSCI) score in Laurel Creek of 58.76, which is below the score of 68 that WVDEP has designated as the minimum for biological integrity.

42. For at least the last decade and as a result of Elk Run's mining operations, Mudlick Fork, Stolling Fork and Laurel Creek have had elevated and increased conductivity and sulfate pollution, biologically impaired aquatic life, and acute and chronic toxicity in their water likely to be associated with adverse impacts to water quality.

43. On the basis of Elk Run's continuing violations of the narrative water quality standards and the absence of any evidence of any meaningful efforts by Elk Run to eradicate the cause of the violations, Plaintiffs allege that Elk Run is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### Alex

44. In 2000, WVDEP issued West Virginia Surface Mining Permit No. S3005-98 to Alex for its 1696-acre Robinson North Surface Mine in Nicholas County, West Virginia. The permit was amended in 2002 and 2005 to add 142 acres and 558.6 acres, respectively, was renewed in 2005 and 2010, and is still in effect. Alex's Robinson North Surface Mine has five valley fills that drain into the north side of Robinson Fork, a tributary of Twentymile Creek, which flows into the Guyandotte River.

45. In 2000, WVDEP issued to Alex WV/NPDES Permit No. WV1015362, which limits discharges from the Robinson North Surface Mine into Twentymile Creek and its tributaries, including Robinson Fork. This permit was renewed in 2005 and 2010 and is still in effect.

46. In 1999, WVDEP transferred West Virginia Surface Mining Permit No. S3013-91 from High Power Energy to Alex for its 726-acre Wildcat Surface Mine (also known as the Area

9

"A" West Surface Mine) on the south side of Robinson Fork. The permit was renewed in 2002 and 2007 and is still in effect. This mine has a 51-acre valley fill that drains into an unnamed tributary of Robinson Fork. Other areas of this mine drain into Wildcat Hollow of Robinson Fork.

47. In 1999, WVDEP transferred WV/NPDES Permit No. WV1012401 from High Power Energy to Alex for its Wildcat Surface Mine (also known as Surface Mine #901). The permit limits discharges from that Mine into Robinson Fork and Jerry Fork. It was renewed in 2006 and 2008 and is still in effect.

48. Alex also holds West Virginia Surface Mining Permit No. S3007-02, issued in 2004, and WV/NPDES Permit WV1019601, issued in 2005, for its Right Fork Surface Mine on the north side of Robinson Fork. These permits have outfalls that drain into Right Fork, a tributary of Robinson Fork.

49. After mining began, and from 2007 to the present, Alex has measured levels of conductivity and sulfate in streams in the Robinson Fork watershed that are downstream of its mining operations and that significantly exceed the levels of those pollutants in baseline measurements in that watershed prior to mining. Conductivity levels have usually exceeded 1,000 µs/cm and have frequently exceeded 3,000 µs/cm.

50. Part C of WV/NPDES Permit Nos. WV1015362, WV1012401 and WV1019601 incorporates by reference 47 CSR § 30-5.1.f, which provides that: "The discharge or discharges covered by a WV/NPDES permit are to be of such quality so as not to cause violation of applicable water quality standards adopted by the Department of Environmental Protection, Title 47, Series 2."

51. WVDEP's narrative water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that

cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

52. In 2008, the West Virginia Department of Environmental Protection classified Robinson Fork as biologically impaired due to ionic stress. WVDEP calculated the WVSCI score for that stream to be 59.95 in 1998 and 50.95 in 2003. EPA measured WVSCI scores in Robinson Fork as 24.75 on March 20, 2007, 61.78 on October 2, 2007, and 61.53 on October 15, 2008.

53. Alex performed three WET tests for chronic toxicity in Robinson Fork in 2009 and 2010. Each of those three tests measured chronic toxicity in excess of EPA's guidance criterion for aquatic life protection.

54. For at least the last decade and as a result of Alex's mining operations at its Robinson North, Right Fork, and Wildcat Surface Mines, Robinson Fork has had elevated and increased conductivity and sulfate pollution, biologically impaired aquatic life, and chronic toxicity in its water. Since Robinson Fork is a major tributary of Twentymile Creek, that creek has also suffered from increased pollution as a result of Alex's mining operations.

55. On the basis of Alex's continuing violations of the narrative water quality standards and the absence of any evidence of any meaningful efforts by Alex to eradicate the cause of the violations, Plaintiffs allege that Alex is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

### FIRST CLAIM FOR RELIEF
**(Elk Run's Clean Water Act Violations)**

56. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 55 supra.

57. Since at least March 2007, Elk Run's White Caste No. 1 Surface Mine and its

East of Stollings Surface Mine have discharged pollutants from their operations through point sources into Laurel Creek and its tributaries, including Mudlick Fork and Stolling Fork, pursuant to WV/NPDES Permit Nos. WV1003968 and WV1013441.

58. Laurel Creek and its tributaries, including Mudlick Fork and Stolling Fork, are waters of the United States within the meaning of 33 U.S.C. § 1362(7).

59. Since at least March 2007, Elk Run has discharged, and continues to discharge, pollutants which cause acute and chronic toxicity, ionic stress, and biological impairment in Laurel Creek and its tributaries, including Mudlick Fork and Stolling Fork, in violation of West Virginia's narrative water quality standards for biological integrity and aquatic life protection. 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

60. The narrative water quality standards for biological integrity and aquatic life protection incorporated by reference into Part C of Elk Run's WV/NPDES Permit Nos. WV1003968 and WV1013441 are "effluent standards or limitations" for purposes of Sections 505(a)(1) and 505(f)(6) of the Clean Water Act because they are a condition of a permit issued under section 402 of the Act. 33 U.S.C. §§ 1342, 1365(a)(1), 1365(f)(6).

61. Based on the WET tests, WVSCI scores, and measured concentrations of specific conductivity and sulfates in Elk Run's discharges, and its failure to take corrective actions to address those conditions, Plaintiffs believe that Elk Run is in continuing and/or intermittent violation of its WV/NPDES Permit Nos. WV1003968 and WV1013441 and the CWA.

62. Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. § 1319(d) and 1365, Elk Run is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in WV/NPDES Permit Nos. WV1003968 and WV1013441.

63. Elk Run is subject to an injunction under the CWA ordering it to cease its permit violations.

## SECOND CLAIM FOR RELIEF

### (Elk Run's SMCRA Violations)

64. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 63 supra.

65. Elk Run's WVSCMRA Permit Nos. S5075-86 and S5057-92 require it to comply with performance standards of the WVSCMRA. 38 C.S.R. § 2-3.33(c).

66. Those standards provide that "discharge from areas disturbed by surface mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 38 C.S.R. § 2-14.5.b.

67. West Virginia water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

68. WVSCMRA performance standards also provide that "[a]ll surface mining and reclamation activities shall be conducted . . . to prevent material damage to the hydrologic balance outside the permit area." 38 C.S.R. § 2-14.5. "Material damage," at a minimum, includes violations of water quality standards.

69. By violating West Virginia water quality standards for biological integrity and aquatic life protection at its White Caste No. 1 Surface Mine and East of Stollings Surface Mine, Elk Run has also violated, and is continuing to violate, the performance standards incorporated as conditions in its WVSCMRA Permit Nos. S5075-86 and S5057-92.

70. Each violation of Elk Run's WVSCMRA permit is a violation of SMCRA and is enforceable under the citizen suit provision of SMCRA, 30 U.S.C. § 1270(a).

71. Elk Run is subject to an injunction under SMCRA ordering it to cease its permit

violations.

## THIRD CLAIM FOR RELIEF

### (Alex's Clean Water Act Violations)

72. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 55 supra.

73. Since at least March 2007, Alex's Robinson North, Right Fork, and Wildcat Surface Mines have discharged pollutants from their operations through point sources into Robinson Fork, its tributaries, and Twentymile Creek downstream of Robinson Fork, pursuant to WV/NPDES Permit Nos. WV1015362, WV1012401, and WV1019601.

74. Twentmile Creek, Robinson Fork, and its tributaries, are waters of the United States within the meaning of 33 U.S.C. § 1362(7).

75. Since at least March 2007, Alex has discharged, and continues to discharge, pollutants which cause acute and chronic toxicity, ionic stress, and biological impairment in Robinson Fork, its tributaries, and Twentymile Creek downstream of Robinson Fork, in violation of West Virginia's narrative water quality standards for biological integrity and aquatic life protection. 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

76. The narrative water quality standards for biological integrity and aquatic life protection incorporated by reference into Part C of Alex's WV/NPDES Permit Nos. WV1015362, WV1012401 and WV1019601 are "effluent standards or limitations" for purposes of Sections 505(a)(1) and 505(f)(6) of the Clean Water Act because they are a condition of a permit issued under section 402 of the Act. 33 U.S.C. §§ 1342, 1365(a)(1), 1365(f)(6).

77. Based on the WET tests, WVSCI scores, and measured concentrations of specific conductivity and sulfates in Alex's discharges, and its failure to take corrective actions to address those conditions, Plaintiffs believe that Alex is in continuing and/or intermittent violation of its

14

WV/NPDES Permit Nos. WV1015362, WV1012401 and WV1019601 and the CWA.

78. Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. § 1319(d) and 1365, Alex is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in WV/NPDES Permit Nos. WV1015362, WV1012401 and WV1019601.

79. Alex is subject to an injunction under the CWA ordering it to cease its permit violations.

## FOURTH CLAIM FOR RELIEF

### (Alex's SMCRA Violations)

80. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 55 and 72-79 supra.

81. Alex's WVSCMRA Permit Nos. S3013-91, S3005-98, and S3007-92 require it to comply with performance standards of the WVSCMRA. 38 C.S.R. § 2-3.33(c).

82. Those standards provide that "discharge from areas disturbed by surface mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 38 C.S.R. § 2-14.5.b.

83. West Virginia water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

84. WVSCMRA performance standards also provide that "[a]ll surface mining and reclamation activities shall be conducted . . . to prevent material damage to the hydrologic balance outside the permit area." 38 C.S.R. § 2-14.5. "Material damage," at a minimum, includes violations of water quality standards.

85. By violating West Virginia water quality standards for biological integrity and

aquatic life protection at its Robinson North, Right Fork, and Wildcat Surface Mines, Alex has also violated, and is continuing to violate, the performance standards incorporated as conditions in its WVSCMRA Permit Nos. S3013-91, S3005-98, and S3007-92.

86. Each violation of Alex's WVSCMRA permit is a violation of SMCRA and is enforceable under the citizen suit provision of SMCRA, 30 U.S.C. § 1270(a).

87. Alex is subject to an injunction under SMCRA ordering it to cease its permit violations.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

1. Declaring that Elk Run has violated and is in continuing violation of the CWA and SMCRA;

2. Enjoining Elk Run from operating its facilities in such a manner as will result in further violations of the effluent limitations in WV/NPDES Permit Nos. WV1003968 and WV1013441;

3. Ordering Elk Run to immediately comply with the effluent limitations in WV/NPDES Permit Nos. WV1003968 and WV1013441;

4. Ordering Elk Run to immediately comply with the terms and conditions of WVSCMRA Permit Number Nos. S5075-86 and S5057-92;

5. Ordering Elk Run to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

6. Ordering Elk Run to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

7. Declaring that Alex has violated and is in continuing violation of the CWA and SMCRA;

8. Enjoining Alex from operating its facilities in such a manner as will result in further violations of the effluent limitations in WV/NPDES Permit WV1015362, WV1012401 and WV1019601;

9. Ordering Alex to immediately comply with the effluent limitations in WV/NPDES Permit WV1015362, WV1012401 and WV1019601;

10. Ordering Alex to immediately comply with the terms and conditions of WVSCMRA Permit Number Nos. S3013-91, S3005-98, and S3007-92;

11. Ordering Alex to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

12. Ordering Alex to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

13. Awarding Plaintiffs their attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

14. Granting other such relief as the Court deems just and proper.

Respectfully submitted,

/s/ **DEREK O. TEANEY**
DEREK O. TEANEY (W.Va. Bar No. 10223)
JOSEPH M. LOVETT (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 645-9006

Counsel for Plaintiffs