IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS CONSERVANCY and
SIERRA CLUB,

                Plaintiffs,

v.                                   CIVIL ACTION NO. 3:12-0785

ELK RUN COAL COMPANY, INC. and
ALEX ENERGY, INC.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Defendants in this case previously filed a Motion for Summary Judgment, ECF No. 59. The Court entered a Memorandum Opinion and Order on November 25, 2013, **DENYING** this Motion, but it reserved the discussion of the bases for its decision regarding its denial of Defendants' asserted Clean Water Act permit shield defense and due process rights for resolution in a later Memorandum Opinion and Order. ECF No. 84. This Memorandum Opinion and Order sets forth the bases for the Court's ruling in regard to these two issues in more detail.

                I.       BACKGROUND

Plaintiffs bring this action pursuant to the citizen suit provisions of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA") and the Surface Mining Control and Reclamation Act ("SMCRA"). Plaintiffs allege that Defendants Elk Run Coal Company, Inc., ("Elk Run") and Alex Energy, Inc., ("Alex Energy") violated these statutes by discharging excessive amounts of ionic pollution, measured as conductivity and sulfates, into the waters of

1

West Virginia in violation of their National Pollutant Discharge Elimination System ("NPDES") permits and their West Virginia Surface Mining Permits. Before proceeding to the parties' arguments, the Court will first discuss the relevant regulatory framework and the factual background of this case.

**A.     Regulatory Framework**

The primary goal of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To further this goal, the Act prohibits the "discharge of any pollutant by any person" unless a statutory exception applies; the primary exception is the procurement of an NPDES permit. 33 U.S.C. §§ 1311(a), 1342. Under the NPDES, the U.S. Environmental Protection Agency ("EPA") or an authorized state agency can issue a permit for the discharge of any pollutant, provided that the discharge complies with the conditions of the CWA. 33 U.S.C. § 1342. A state may receive approval to administer a state-run NPDES program under the authority of 33 U.S.C. § 1342(b). West Virginia received such approval and its NPDES program is administered through the West Virginia Department of Environmental Protection ("WVDEP"). 47 Fed. Reg. 22363-01 (May 24, 1982). All West Virginia NPDES permits incorporate by reference W. Va. Code R. § 47-30-5.1.f, which states that "discharges covered by a WV/NPDES permit are to be of such quality so as not to cause violation of applicable water quality standards promulgated by [W. Va. Code R. § 47-2]."

Coal mines are also subject to regulation under the SMCRA, which prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") or an authorized state agency. 30 U.S.C. §§ 1211, 1256, 1257. A state may receive approval to administer a state-run surface mining permit program under the authority of 30 U.S.C. § 1253. West Virginia

received conditional approval and its surface mining permit program is administered through the WVDEP pursuant to the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA"). W. Va. Code §§ 22-3-1 to -33; 46 Fed. Reg. 5915-01 (Jan. 21, 1981). Regulations passed pursuant to the WVSCMRA require permittees to comply with the terms and conditions of their permits and all applicable performance standards. W. Va. Code R. § 38-2-3.33.c. One of these performance standards requires that mining discharges "shall not violate effluent limitations or cause a violation of applicable water quality standards." *Id.* § 38-2-14.5.b. Another performance standard mandates that "[a]dequate facilities shall be installed, operated and maintained using the best technology currently available . . . to treat any water discharged from the permit area so that it complies with the requirements of subdivision 14.5.b of this subsection." *Id.* § 38-2-14.5.c.

West Virginia's water quality standards—as referenced in relation to both permits—are violated if wastes discharged from a surface mining operation "cause . . . or materially contribute to" 1) "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or 2) a "significant adverse impact to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." *Id.* § 47-2-3.2.e, -3.2.i.

B.  Factual Background

   1.  Elk Run

Elk Run operates the White Castle No. 1 Surface Mine and the East of Stollings Surface Mine, both in Boone County, West Virginia. Stip. ¶¶ 1, 12, ECF No. 47. Each mine is regulated both by WV/NPDES permits and by West Virginia Surface Mining Permits issued by the WVDEP under the CWA and the SMCRA. *Id.* ¶¶ 3, 14. The White Castle No. 1 Surface Mine has seven valley fills that discharge from Outlets 001, 002, 003, 004, and 017 into Laurel Creek,

a tributary of the Big Coal River. *Id.* ¶ 2. The East of Stollings Surface Mine also has seven valley fills that discharge from Outfalls 001 through 007 and 019 into Mudlick Fork and Stolling Fork, tributaries of Laurel Creek. *Id.* ¶ 13.

According to the Declaration of Plaintiffs' expert, Margaret A. Palmer, Director of the National Socio-Environmental Synthesis Center at the University of Maryland, "a significant body of scientific research has clearly shown that levels of conductivity about ~ 300 uS/cm and elevated sulfate levels are common below Appalachian mine sites and lead to extirpation of invertebrate genera."[1] Palmer Decl. 11, ECF No. 57-3. Pre-permit and pre-mining surveys in the Laurel Creek watershed showed conductivity in the range of 44.6 to 807 μS/cm, while more recent data show consistent conductivity levels above the 300 μS/cm level, with the majority of readings over 1,000 or 2,000 μS/cm. Stip. at 16-26 & ¶¶ 6, 8, 9, 17, 20.

### 2. Alex Energy

Alex Energy operates the Robinson North Surface Mine and the Wildcat Surface Mine, both in Nicholas County, West Virginia. *Id.* ¶¶ 23, 45. Each mine is regulated both by WV/NPDES permits and by West Virginia Surface Mining Permits issued by the WVDEP under the CWA and the SMCRA. *Id.* ¶¶ 27, 47. The Robinson North Surface Mine has four valley fills that discharge from Outlets 001, 002, and 003 into Robinson Fork. *Id.* ¶ 26. The Wildcat Surface Mine has a large valley fill which discharges from Outlet 004 into an unnamed tributary of Robinson Fork and from Outlet 007 into Wildcat Hollow, a tributary of Robinson Fork. *Id.* ¶ 46.

Recent data from surveys in the Robinson Fork watershed show consistent conductivity levels above the 300 μS/cm level, with the vast majority of readings ranging from 1,000 to 3,000 μS/cm. *Id.* at 29-32 & ¶¶ 35-38, 50-53. Before extensive mining took place in the Robinson Fork

---

[1] Plaintiffs argue that this information, along with other evidence, shows Defendants have been and are violating West Virginia's narrative water quality standards by causing harm to aquatic life or by having a significant adverse impact on the biological components of aquatic ecosystems.

watershed, surveys showed sulfates in the range of 22 to 37 mg/l, while more recent data show consistent sulfate levels above 1,500 mg/l, with the majority of readings over 1,000 mg/l. *Id.* at 29-32 & ¶ 30.

C. **Defendants' Arguments**

Defendants argue that Plaintiffs' claims must fail because:

1. Section 402(k) of the CWA shields Defendants from liability because Defendants are in compliance with their WV/NPDES permits and the discharges were reasonably contemplated by the permitting authority (Defs.' Mem. Supp. 2-3, 11-29; Defs.' Reply 1-19); and

2. Imposition of liability on Defendants for their discharges would violate Defendants' due process rights by depriving Defendants of property after they reasonably relied upon the CWA's permit shield (Defs.' Reply 19-22).

II. ANALYSIS

A. **Summary Judgment Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Id.* at 249. Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Summary judgment is appropriate, however, when the nonmoving party has the burden of proof on an essential element

of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252. Summary judgment is also appropriate when the inquiry involves a pure question of law. *Taft v. Vines*, 70 F.3d 304, 316 (4th Cir. 1995), *vacated on different grounds en banc*, 83 F.3d 681 (4th Cir. 1996).

### B. Section 402(k) of the CWA Does Not Shield Defendants from Liability

Defendants argue that Section 402(k) of the CWA, known as the "permit shield," shields them from liability for violations of West Virginia's water quality standards if they are not in violation of any of the specific effluent limits detailed in their permits. Section 402(k) states:

> Compliance with a permit issued pursuant to this section shall be deemed compliance, for purposes of [government enforcement actions] and [citizen suits], with sections 1311 [effluent limitations], [and] 1312 [water quality related effluent limitations] . . . of this title . . . .

However, Defendants' WV/NPDES permits incorporate West Virginia Code of State Rules § 47-30-5.1.f, which mandates compliance with state water quality standards. Thus, as explained in detail in *Ohio Valley Environmental Coalition, Inc., v. Marfork Coal Company, Inc.*, if Defendants are not in compliance with state water quality standards, they are also not in compliance with their permits. No. 5:12-cv-1464, 2013 WL 4506175, at *7-17 (S.D. W. Va. Aug. 22, 2013); *see also Ohio Valley Envtl. Coal., Inc. v. Fola Coal Co.*, No. 2:12-3750, at *19-20 (S.D. W. Va. Dec. 19, 2013). Therefore, the permit shield would not apply.[2] *Marfork*, 2013 WL 4506175, at *7-17; *Fola Coal*, No. 2:12-3750, at *19-20.

---

[2] In *Marfork*, the Court also alternatively held that, even if the WV/NPDES permits did not incorporate the state's water quality standards through § 47-30-5.1.f, the permit shield would still not apply to the defendant because the pollutant in that case—selenium—was not within the reasonable contemplation of the permitting authority at the time the permit was issued. The Court need not make a determination of this issue here.

6

In support of their contention that the state's water quality standards are not incorporated into their WV/NPDES permits, Defendants argue that 1) the West Virginia Legislature clarified that Defendants' interpretation of whether the WV/NPDES permits incorporate § 47-30-5.1.f was correct by passing Senate Bill 615, 2) the WVDEP implemented this interpretation of S.B. 615 by amending the language of § 47-30-5.1.f, and 3) the WVDEP's interpretation of S.B. 615 is the same as Defendants', as shown by the WVDEP's response to inquiries from the EPA and the regulated community seeking clarification of the WVDEP's interpretation of S.B. 615. All three of these arguments were dealt with and rejected in turn by the Court in *Marfork*. 2013 WL 4506175, at *8-12; *see also Fola Coal*, No. 2:12-3750, at *19-20. The Court will not revisit its decisions regarding those issues.

Defendants also argue that § 47-30-5.1.f was never properly promulgated under state or federal law and that, therefore, it is not an enforceable permit condition. The Court explored this argument in depth in its recent decision, *Ohio Valley Environmental Coalition, Inc. v. Fola Coal Co.*, and ultimately found that § 47-30-5.1.f is an explicit and enforceable condition of WV/NPDES permits, based upon five conclusions: 1) permit holders may not collaterally attack their WV/NPDES permits in enforcement actions; alternatively, 2) to the extent that permittees may attack their permits, they are now time-barred from bringing such actions, despite the discovery rule; 3) more likely than not, the original water quality standards provision—the precursor to § 47-30-5.1.f—was properly promulgated, and in any event, the defendant in *Fola Coal*—like Defendants here—failed to meet its burden of demonstrating that the rule should now be overturned as improperly promulgated; 4) the incorporation of the state's water quality standards into the WV/NPDES permits through § 47-30-5.1.f is consistent with the CWA; and 5) even if the promulgation of the original version of § 47-30-5.1.f was improper, any such defect

7

has been cured by subsequent repromulgation. No. 2:12-3750, at *21-39. Therefore, if Defendants violate the WV/NPDES permit condition incorporating § 47-30-5.1.f, they remain unprotected by CWA's permit shield. *Id.* at *20, 39. The Court will briefly discuss the support for each of these conclusions in turn.

### 1. Defendants may not collaterally attack their WV/NPDES permits in an enforcement action

If a permit-holder wishes to attack the terms of an NPDES permit issued by a state permitting authority, it must bring an action challenging the terms of the permit *under state procedures*;[3] thus, such a permit holder may *not* seek collateral review of the permit in federal court. *Id.* at *22. Defendants appear not to have sought such review here. Regardless, a collateral attack of NPDES permits in a federal enforcement action such as this would remain inappropriate because federal law provides no mechanism for Defendants to challenge their permits in this proceeding. *Id.* at *23 n.6.

Any challenge to § 47-30-5.1.f directly—as opposed to a challenge to the *permit condition* incorporating § 47-30-5.1.f—also cannot be brought in an enforcement proceeding such as this. West Virginia's State Administrative Procedures Act ("APA") provides for declaratory judgments concerning the validity of a state rule. W. Va. Code § 29A-4-2(a); *Fola Coal*, No. 2:12-3750, at *23. Such a case must be brought within one year of the promulgation of the challenged rule in the Circuit Court of Kanawha County, West Virginia, and the applicable agency must be made a party to the proceeding. W. Va. Code §§ 29A-4-2(a), 55-2-12(c); *Fola Coal*, No. 2:12-3750, at *23-24. As in *Fola Coal*, Defendants here are not bringing a declaratory

---

[3] Even if Defendants' challenge to their permits was otherwise proper—which it is not—, such a challenge would remain problematic due to its late timing: "West Virginia law provides that a permit-holder may file an administrative appeal of his or her permit, but the permit-holder must file a notice of such appeal within *30 days* of issuance of the permit." *Fola Coal*, No. 2:12-3750, at *22-23 (emphasis added). The WV/NPDES permits in this case were issued in 2007, 2008, and 2010. Stip. ¶¶ 4, 15, 28, 48. Thus, the statute of limitations for such an appeal has already run.

8

judgment suit against the WVDEP that the water quality standards provision cannot be included in its permits or enforced according to its literal terms, and this Court is not the Circuit Court of Kanawha County, West Virginia.[4] *Fola Coal*, No. 2:12-3750, at *24. Thus, Defendants' attempted collateral attack of their permits in this federal enforcement action—by arguing that § 47-30-5.1.f is unenforceable—is improper.

Although the WVDEP could modify a WV/NPDES permit—and though there is no time limit for a permit-holder to seek such modification—, the proper route through which to seek this modification is to lodge a request with the WVDEP, not to challenge a permit during an enforcement action in federal court. *Id.* at *27. Further, there is no indication that the EPA or the WVDEP is engaging in any sort of formal review of § 47-30-5.1.f, the rule which is herein contested. *Id.*

Defendants' argument regarding the alleged improper promulgation of § 47-30-5.1.f is thus barred under *Fola Coal* as an improper collateral attack by Defendants on their WV/NPDES permits.

### 2. To the extent that Defendants may attack their permits, they are now time-barred from bringing such actions, despite any applicability of the discovery rule

Alternatively, to the extent that Defendants are permitted to attack the promulgation of § 47-30-5.1.f in connection with their WV/NPDES permits, such an attack is time-barred. The statute of limitations for a facial challenge to a rule—including procedural challenges, such as Defendants' argument that § 47-30-5.1.f was improperly promulgated—begins to run when the rule is promulgated. *Id.* at *24-25. Here, the water quality standards provision of § 47-30-5.1.f

---

[4] Even if Defendants' challenge to § 47-30-5.1.f was otherwise proper—which it is not—, such a challenge is again untimely, given that the statute of limitations for such an action is one year and § 47-30-5.1.f was promulgated nearly thirty years ago. *Fola Coal*, No. 2:12-3750, at *25.

became effective in 1985, nearly thirty years ago. *Id.* at *25. This action is, thus, well outside the applicable one-year statute of limitations under West Virginia law. *Id.*

Even if Defendants were otherwise properly bringing an action against the EPA, arguing that its approval of the provision was procedurally invalid, Defendants had only six years after federal approval of the state program to do so.[5] *Id.* Such approval occurred in 1985, so Defendants' instant challenge would still be occurring well outside of the applicable six-year period. *Id.* Thus, Defendants are time-barred from attacking the promulgation of § 47-30-5.1.f in connection with their WV/NPDES permits.

Defendants nevertheless argue that the discovery rule should lead to the conclusion that the statute of limitations has not run since it only began to run upon the discovery by Defendants of Plaintiffs' "novel" interpretation of the incorporation of § 47-30-5.1.f into the WV/NPDES permits. Under the discovery rule, "the statute of limitations does not begin to run until plaintiffs discover, or *reasonably should have discovered*, all the elements of their claim." *Natural Res. Def. Council v. EPA*, 806 F. Supp. 1263, 1277 n.14 (E.D. Va. 1992) (emphasis added). By the *explicit* incorporation of § 47-30-5.1.f into all WV/NPDES permits, compliance with water quality standards became a clear condition of Defendants' permits. *See also Fola Coal*, No. 2:12-3750, at *26. This unambiguous language, together with the rule requiring inclusion of the water quality provision of § 47-30-5.1.f in WV/NPDES permits, precludes Defendants' reliance on the discovery rule. *See also id.* As this Court stated in *Fola Coal*, "The effect of § 47-30-5.1.f has been apparent from the issuance of the permits, even if no suit was brought until recent years to enforce that provision." *Id.* The WV/NPDES permits in this case were issued in 2007, 2008, and 2010. Stip. ¶¶ 4, 15, 28, 48. Thus, the discovery rule does not change the fact that the statute of

---

[5] A six-year statute of limitations applies to any suit against the federal government. 28 U.S.C. § 2401(a).

limitations already ran on any state action attacking the condition which incorporates § 47-30-5.1.f into these WV/NPDES permits.

### 3. It is more likely than not that the original precursor to § 47-30-5.1.f was properly promulgated; additionally, Defendants fail to meet their burden of demonstrating that the rule should now be overturned as improperly promulgated

In *Fola Coal*, this Court found that it is more likely than not that the original water quality standards provision—the precursor to § 47-30-5.1.f—was properly promulgated.

Under West Virginia's version of the APA, a rule is only effective if it is properly promulgated. W. Va. Code § 29A-3-1; *Fola Coal*, No. 2:12-3750, at *27. Two provisions of West Virginia's State APA are key to Defendants' argument that the precursor to § 47-30-5.1.f was never duly promulgated: West Virginia Code § 29A-3-6 and § 29A-3-8. Section 29A-3-6 states, "If the agency amends the proposed rule *as a result of the evidence or comment presented* pursuant to section five, such amendment shall be filed with a description of any changes and a statement listing the reasons for the amendment." W. Va. Code § 29A-3-6(a) (emphasis added). Section 29A-3-8 states, "A procedural or interpretive rule may be amended by the agency prior to final adoption without further hearing or public comment. No such amendment may change the *main purpose* of the rule." W. Va. Code § 29A-3-8 (emphasis added).

First, Defendant fails to provide any evidence that the addition of the water quality standards provision to the precursor to § 47-30-5.1.f was "a result of the evidence or comment presented" pursuant to the West Virginia APA's notice and comment period. The procedural requirement of filing an amended rule together with a description of any changes and a list of reasons for the amendment is only triggered when the amendment is the result of evidence or comment presented during the notice and comment period. Defendants have failed to provide any evidence that the amendment is the result of such evidence or comment. Thus, they fail to

11

show that this procedural requirement attached to the addition of the water quality standards provision during the promulgation of the precursor to § 47-30-5.1.f. Therefore, Defendants have failed to show that the precursor to § 47-30-5.1.f was improperly promulgated under § 29A-3-6.

Second, assuming, without deciding, that the precursor to § 47-30-5.1.f was a procedural or interpretive rule, § 29A-3-8 would only have required further hearing or public comment after an amendment had been made to the precursor of § 47-30-5.1.f by the agency if the amendment changed the *main purpose* of the rule. As explained below, the addition of the water quality standards provision to the precursor of § 47-30-5.1.f did not change the main purpose of the rule.

Prior to 1984, the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") and the West Virginia Water Pollution Control Act were administered by separate entities. *Fola Coal*, No. 2:12-3750, at *29. Originally, the NPDES permitting rules in West Virginia did not include language requiring a permit holder to comply with water quality standards. *See* W. Va. Code R. 20-5A, Series II (1981).[6] In 1984, West Virginia's surface mining rules (under Article 6) and the state's water pollution control rules related to coal facilities (under Article 5A) were consolidated, and coal facilities were made subject to their own separate administrative permitting process, administered by the West Virginia Department of Natural Resources—the precursor to the WVDEP. *Fola Coal*, No. 2:12-3750, at *29. The revised version of the WV/NPDES rules for coal facilities proposed in October 1984 included—apparently for the first time—the requirement that discharges meet water quality standards:

> The effluent or effluents covered by this permit are to be of such quality so as not to cause violation of applicable water quality standards adopted by the State Water Resources Board. Further, any activities covered under this permit shall not lead to pollution of the groundwater of the state as a result of the disposal or discharge of such wastes covered herein.

---

[6] *Available at* http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=22240&Format=PDF. These original rules applied to all WV/NPDES permits issued for any and all industries or activities.

W. Va. Code R. Art. 5A/NPDES Regulations, § 10E.01(f) (1984).[7]

Surface mining regulations effective in August 1984—*prior* to the October 1984 version of the consolidated WV/NPDES rules—stated that "[d]ischarge from the permit area shall not violate effluent limitations or cause a violation of water quality standards." Water Quality, § 6B.04(b).[8] The preamble to the later proposed consolidated regulations explained the purposes of consolidation, which included "provid[ing] one-stop shopping for permits required under both the Water Pollution Control [Act] and the [WVSCMRA]." Preamble to Proposed Regulations Consolidating the Article 5A and Article 6 Program, at 2.[9] In *Fola Coal*, this Court thus concluded that the water quality standards language was likely inserted into the consolidated WV/NPDES rules to make them consistent with the state's already existent surface mining regulations—in essence, to create the one-stop shopping that was the goal of the consolidated rules in the first place. No. 2:12-3750, at *30. This Court also found that the addition of the water quality provision did not change the main purpose of the consolidated regulations—that purpose being the consolidation, itself. *See id.* at *32. Thus, Defendants have not shown that the precursor to § 47-30-5.1.f was improperly promulgated under § 29A-3-8.

Though legislative history on the promulgation of the precursor to § 47-30-5.1.f is patchy, the clearly stated goal of consolidating the permitting process under both laws and the fact that numerous changes were made to the proposed rules as they moved through the rulemaking process also add to the Court's conclusion that it is more likely than not that the

---

[7] "Approved" Proposed Regulations, Oct. 18, 1984, *available at* http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=15239& Format=PDF.

[8] *Available at* http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=6984&Format=PDF, at 69. Proper citation is impossible because the title of the rule is omitted from the PDF—which is missing pages 1 through 4.

[9] *Available at* http://apps.sos.wv.gov/adlaw/csr/readfile.aspx?DocId=15239&Format=PDF, at 2-10.

original water quality standards provision—the precursor to § 47-30-5.1.f—was properly promulgated.[10] *Id.* at *31-32.

Defendants argue further that the EPA never properly approved of § 47-30-5.1.f. Regarding EPA approval of revisions to a state's existing NPDES program, the Code of Federal Regulations states:

> Whenever EPA determines that the proposed program revision is substantial, EPA shall issue public notice and provide an opportunity to comment for a period of at least 30 days. The public notice shall be mailed to interested persons and shall be published in the Federal Register and in enough of the largest newspapers in the State to provide Statewide coverage. The public notice shall summarize the proposed revisions and provide for the opportunity to request a public hearing. Such a hearing will be held if there is significant public interest based on requests received.

40 C.F.R. § 123.62(b)(2). The EPA's public notice regarding consolidation of surface mining and water pollution control regulations for coal facilities in West Virginia appeared at 50 Fed. Reg. 2996-02 (Jan. 23, 1985). In *Fola Coal*, this Court concluded that the public was properly on notice that the drafted version of the consolidated rules included the water quality standards provision because of the stated purpose of the consolidation to provide one-stop shopping for permits required under both the Water Pollution Control Act and the WVSCMRA and because West Virginia's existing surface mining regulations already contained such a requirement. No. 2:12-3750, at *33.

In any event, Defendants here—like the defendant in *Fola Coal*—failed to meet their burden of demonstrating that the rule should now be overturned as improperly promulgated.[11] *Id.*

---

[10] Furthermore, this Court in *Fola Coal* found that the addition of the water quality standards language was a "logical outgrowth" of the earlier draft(s) of the consolidated rules. *Id.* at *32 n.19.

[11] If Defendants brought a direct challenge to state agency rule promulgation, they would have to show that "the rule violates constitutional provisions or exceeds the statutory authority or jurisdiction of the agency or was adopted without compliance with statutory rule-making procedures or is arbitrary or capricious . . . ." W. Va. Code § 29A-4-2(b); s*ee also* 5 U.S.C. § 706(2)(D) (a court can "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law").

at *34. Thus, Defendants' argument that § 47-30-5.1.f was improperly promulgated—and that it is therefore unenforceable as a WV/NPDES permit condition—fails on its merits.

### 4. The incorporation of the state's water quality standards into the WV/NPDES permits through § 47-30-5.1.f is consistent with the CWA

Defendants also argue that the incorporation of the state's water quality standards into WV/NPDES permits through § 47-30-5.1.f is inconsistent with the CWA because it is more stringent than the requirements of the CWA. However, as this Court stated in *Fola Coal*, "[t]he enforceability of the water quality standards provision is not a modification of the CWA—rather, it is consistent with the CWA." *Id.* State law standards are *incorporated* into the CWA—even if they are more stringent than federal standards under the CWA—and are thus enforceable through citizen suits under 33 U.S.C. § 1365.[12] *Id.*; *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1006-08 & n.15 (11th Cir. 2004). Under the CWA, entities must follow "any more stringent limitation, including those necessary to meet water quality standards . . . established pursuant to any State law or regulations." 33 U.S.C. § 1311(b)(1)(C). Also, all NPDES permits must comply "with the applicable water quality requirements of all affected States." 40 C.F.R. § 122.4(d). This regulation effectively incorporates state-law standards into federal law. *See Arkansas v. Oklahoma*, 503 U.S. 91, 110 (1992). Since the CWA allows for enforcement of a state's permit water quality provisions, even when—as here—the state standards may be stricter than federal standards, the incorporation of West Virginia's water quality standards into WV/NPDES permits through § 47-30-5.1.f is consistent with the CWA.

---

[12] Plaintiffs' citizen suit clearly falls within the ambit of 33 U.S.C. § 1365(a)(1), which states,
> [A]ny citizen may commence a civil action . . . against any person who is alleged to be in violation of . . . an effluent standard or limitation under this chapter or . . . an order issued by the Administrator or a State with respect to such a standard or limitation . . . .

Per *Marfork*, the WV/NPDES permit condition incorporating § 47-30-5.1.f is enforceable as an "effluent standard or limitation" under § 1365(a).

15

5. **Even if the promulgation of the original version of § 47-30-5.1.f was improper, any such defect has been cured by subsequent repromulgation**

Finally, this Court in *Fola Coal* also rejected the defendant's argument that the promulgation of § 47-30-5.1.f was improper—and that thus the permit condition incorporating § 47-30-5.1.f was unenforceable—by noting that any defect in the promulgation of § 47-30-5.1.f has been cured by subsequent repromulgation. No. 2:12-3750, at *37-39.

At least two of the revisions to the predecessor of § 47-30-5.1.f over the nearly thirty years since the rule's initial promulgation involved *direct changes* to the water quality standards provision here at issue. *Id.* at *37-38. Proposed amendments in 1987/1988 made it clear that the West Virginia Department of Natural Resources planned to change the *very sentence* that prohibited violation of water quality standards. *Id.* The same is true for an amendment in 1996/1997. *Id.* Thus, even if the earlier notice-and-comment rulemaking was defective, any such defect was cured by subsequent repromulgations because such repromulgations provided a meaningful opportunity for interested parties to comment on the water quality standards portion of the predecessor to § 47-30-5.1.f. *Id.* at *39.

6. **Defendants' additional argument that the promulgation of § 47-30-5.1.f was improper because WVDEP's predecessor improperly failed to submit an updated fiscal note to the Legislative Rulemaking Committee fails for the same reasons as Defendants' other arguments that § 47-30-5.1.f was improperly promulgated**

In their Reply, Defendants additionally argue—for the first time—that the WVDEP's predecessor, after adding the water quality standards provision to the predecessor to § 47-30-5.1.f, failed to submit an updated fiscal note to the Legislative Rulemaking Committee highlighting § 47-30-5.1.f's expansion of regulatory and administrative burdens on the coal industry and the State—despite the fact that West Virginia's version of the APA requires that "[i]f the fiscal implications have changed since the rule was proposed, a new fiscal note shall be

attached to the notice of filing." W. Va. Code § 29A-3-8. Defendants argue that the incorporation of § 47-30-5.1.f into the WV/NPDES permits would "radically expand the scope of the proposed rules" and "increase the financial burdens to both individual permittees and the State." Defs.' Reply 7.[13] As discussed earlier, Defendants may not collaterally attack the validity of their permits or the promulgation of § 47-30-5.1.f in this forum. Additionally, they are time-barred from doing so. Finally, the Court disagrees with Defendants' assessment of the net cost of § 47-30-5.1.f—for which Defendants offer no supporting documentation. As discussed earlier, the water quality standards requirement of § 47-30-5.1.f was likely merely the result of the larger purpose of consolidating two programs, under one of which—the surface mining regulations—Defendants would have already been required to meet state water quality standards. Thus, the cost to individual permittees would have remained the same, and the cost to the State would have stayed the same or been reduced, given that, after the promulgation of the new rules, the State needed only to administer one program, instead of two.

Thus, Defendants' argument that § 47-30-5.1.f was never properly promulgated under state or federal law and that, therefore, it is not an enforceable permit condition fails. As a result, Defendants are not protected by the permit shield if they violate state water quality standards because their WV/NPDES permits explicitly incorporate § 47-30-5.1.f, which is an enforceable rule that requires compliance with state water quality standards.

### C. Defendants' Due Process Rights Have Not Been Violated

In their Reply, Defendants argue briefly—and for the first time—that, if § 47-30-5.1.f requires Defendants to comply with water quality standards "despite compliance with their

---

[13] Defendants also cite to ECF No. 59-19 at 1 for a statement by the West Virginia Department of Natural Resources in its initial Statement of Economic Impact of Proposed Rules or Regulations that the rules package would have no impact on the regulated community and would, in fact, "reduce costs due to [sic] one-stop permitting process." Defs.' Reply 7. However, ECF No. 59-19 is actually the Preamble to Approved Regulation Consolidating the Article 5A and Article 6 Program—not a Statement of Economic Impact of Proposed Rules or Regulations. Page one of the exhibit does not contain this quote.

17

WV/NPDES permits' effluent limitations," the imposition of liability for noncompliance would violate their due process rights. Defs.' Reply 19. However, as explained above, if Defendants are in violation of water quality standards, they are *not* in compliance with their WV/NPDES permits because the permits incorporate § 47-30-5.1.f, which clearly states that discharges under the permits must be in compliance with water quality standards.

Defendants argue that they reasonably relied upon the permit shield to protect them from suits based upon violations of water quality standards when specific effluent limitations in the permit have not been violated and that Plaintiffs' interpretation of the permit condition incorporating § 47-30-5.1.f deprives them of notice in violation of their due process rights. Defendants then re-argue that 1) the West Virginia Legislature clarified that Defendants' interpretation of whether the WV/NPDES permits incorporate § 47-30-5.1.f was correct by passing S.B. 615, 2) the WVDEP implemented this interpretation of S.B. 615 by amending the language of § 47-30-5.1.f, and 3) the WVDEP's interpretation of S.B. 615 is the same as Defendants', as shown by the WVDEP's response to inquiries from the EPA and the regulated community seeking clarification of the WVDEP's interpretation of S.B. 615.

As discussed earlier, this Court already decided these issues in *Marfork*. 2013 WL 4506175, at *10-12. There, this Court ruled that S.B. 615 is ambiguous on this issue, that the WVDEP's amendment to § 47-30-5.1.f is ambiguous and has no new effect, and that the WVDEP's interpretation of S.B. 615 has been contradictory. *Id.* Thus, Defendants' reliance on these sources for its interpretation of the permit condition incorporating § 47-30-5.1.f was not reasonable. Further, as stated above, the permit condition and § 47-30-5.1.f, itself, are both unambiguous in imposing liability upon Defendants in the event that they violate water quality standards through discharges under their permits. Defendants have had notice of the possibility

of civil liability since the predecessor to § 47-30-5.1.f first became effective in 1985 or, in any event, no later than the date on which the permits, inclusive of this clear permit condition, were issued. Thus, Defendants' argument that their due process rights are violated by the imposition of liability for violations of the WV/NPDES permit condition incorporating § 47-30-5.1.f is without merit.

### III.  CONCLUSION

For the reasons stated above and for the reasons outlined in the Court's November 25, 2013, Memorandum Opinion and Order, ECF No. 84, the Court **DENIES** Defendants' Motion for Summary Judgment, ECF No. 59.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:    January 3, 2014

_____
ROBERT C. CHAMBERS, CHIEF JUDGE