IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY, and
SIERRA CLUB,

        Plaintiffs,

    v.                                  CIVIL ACTION NO. 3:12-cv-0785

ELK RUN COAL COMPANY, INC.,
and ALEX ENERGY, INC.,

        Defendants.

### SECOND AMENDED CONSENT DECREE

## I.  RECITALS

1.      On March 20, 2012, Plaintiffs Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Inc., and Sierra Club (collectively "Plaintiffs") filed a Complaint for Declaratory and Injunctive Relief and for Civil Penalties ("Complaint") in this civil action against Defendants Elk Run Coal Company, Inc., and Alex Energy, Inc. ("Defendants").  ECF No. 1.

2.      The Complaint alleged that Defendants are discharging concentrations of pollutants in violation of West Virginia's narrative water quality standards for biological stream protection and that these standards are incorporated into West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permit Nos. WV1003968, WV1013441, WV1015362, WV1012401, and WV1019601 issued to Defendants by the West Virginia Department of Environmental Protection ("WVDEP") pursuant to Section 402 of the federal Clean Water Act ("CWA") and the West Virginia Water Pollution Control Act.  The Complaint further alleged that

Defendants' violations of West Virginia's narrative water quality standards constituted a violation of the performance standards under the federal Surface Mining Control and Reclamation Act of 1977 ("SMCRA") and the terms and conditions of its West Virginia Surface Mining Permits S5075-86, S5057-92, S3013-91, S3005-98, and S3007-92.

3.　　On July 13, 2012, the Court bifurcated this case into two phases: (1) jurisdiction and liability; and (2) injunctive relief.  ECF No. 16.  Trial was held on the jurisdiction and liability phase from December 3, 2013 to December 4, 2013.

4.　　On June 4, 2014, the Court issued a Memorandum Order and Opinion regarding the jurisdiction and liability phase.  ECF No. 110.  The Court found that Plaintiffs established, by a preponderance of the evidence, that Defendants committed at least one violation of their permits by discharging high levels of ionic pollution, which caused or materially contributed to a significant adverse impact to the chemical and biological components of the applicable stream's aquatic ecosystem, in violation of the narrative water quality standards that are incorporated into Defendants' permits.  ECF No. 110.

5.　　On February 2, 2015, the Court entered the Original Consent Decree in this matter, which resulted in the closure of the case.  ECF No. 159

6.　　On August 3, 2015, Defendants filed a petition for Bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Proceeding").  On or about May 25, 2016, Defendants, their parent company, and other affiliated companies filed the *Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession* in the Bankruptcy Proceeding ("the Plan").

7.　　On June 30, 2016, the parties entered a Settlement Agreement, which provided consideration for the submission of the proposed changes in the First Amended Consent Decree

and for the proposed changes themselves.  The Settlement Agreement resolved the Plaintiffs' objections to the Plan.

8.      On or about July 12, 2016, the United States Bankruptcy Court for the Eastern District of Virginia entered an order confirming the Plan.

9.      On October 6, 2016, this Court entered the First Amended Consent Decree negotiated by the parties.

10.   Since the entrance of the First Amended Consent Decree the parties have conferred and negotiated this Second Amended Consent Decree to develop more effective methods of addressing coal mine pollution in the region.  This Second Amended Consent Decree represents the Parties' attempt to maximize benefits to streams impacted by ionic pollution associated with coal mining in central Appalachia.   Plaintiffs' academic experts have been involved at all stages in developing the instant Amendment and believe that it would provide significant improvements to water (e.g. reduction in conductivity) and other environmental resources in the Kanawha River watershed (the same watershed in which the mines that were the object of the action are located).

11.     The Parties recognize, and the Court by entering this Second Amended Consent Decree finds, that the Second Amended Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation among the Parties, and that this Second Amended Consent Decree is fair, reasonable and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

## II.  JURISDICTION AND VENUE

12.     For purposes of this Second Amended Consent Decree, the Parties agree that this Court has jurisdiction over the Parties and over the subject matter of this action pursuant

to 28 U.S.C. § 1331 (federal question jurisdiction), 33 U.S.C. § 1365 (CWA citizen suit provision) and 30 U.S.C. § 1270 (SMCRA citizen suit provision).

13.   Venue is proper in the Southern District of West Virginia, pursuant to 28 U.S.C. § 1391(b) and (c), because it is the judicial district in which Defendants are located, reside and/or do business, and/or in which the violations alleged in the Complaint occurred, as well as 33 U.S.C. § 1365(c)(1), because the sources of the alleged CWA violations are located in this judicial district, and 30 U.S.C. § 1270(c), because the coal mining operations complained of are located in this judicial district.

14.   For purposes of this Second Amended Consent Decree, or any action to enforce this Second Amended Consent Decree, Defendants consent to this Court's jurisdiction over this Second Amended Consent Decree and consent to venue in this judicial district.

15.   The Defendants further consent to the jurisdiction of this Court to enforce or to resolve disputes arising under the Settlement Agreement of June 30, 2016, which sets forth the consideration for modifications to the First Amended Consent Decree from the Original Consent Decree.

## III.  APPLICABILITY

16.   The provisions of this Second Amended Consent Decree apply to and are binding upon Plaintiffs and those with authority to act on their behalf, including, but not limited to, their officers, directors, and staff; upon Defendants and any of their respective successors and/or assigns; and upon other persons or entities otherwise bound by the law.

## IV.  DEFINITIONS

17.   Terms used in this Second Amended Consent Decree that are defined in the CWA, SMCRA or in regulations issued pursuant thereto shall have the meanings assigned to them therein,

unless otherwise provided in this Second Amended Consent Decree.  Whenever the terms set forth below are used in this Second Amended Consent Decree, the following definitions shall apply:

a.      "Complaint" shall mean the Complaint for Declaratory and Injunctive Relief filed by Plaintiffs in this action on March 20, 2012;

b.      "CWA" shall mean the federal Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*;

c.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Second Amended Consent Decree, where the last day would fall on a Saturday, Sunday or federal holiday, the period shall run until the close of business of the next business day;

d.      "Defendants" shall mean Elk Run Coal Company, Inc. and Alex Energy, Inc.,;

e.      "Effective Date" shall have the definition provided in Section XIV ("Effective Date");

f.      "Experimental Practice Projects" means new or innovative reclamation and or stream mitigation techniques developed or implemented by Appalachian Headwaters, in consultation with experts, including those in the fields of reclamation of mined areas, forestry, aquatic habitats, entomology and water chemistry, and stream rehabilitation and enhancement in the course of carrying out the Reclamation Projects under this Decree.

g.      "Enhanced Reclamation Projects" are reclamation projects meant to enhance or improve existing mined land reclamation and developed or implemented by Appalachian Headwaters in the course of carrying out the Reclamation Projects under this Decree.

h.      "First Amended Consent Decree" shall refer to ECF No. 163 entered in this action by the Court on October 6, 2016.

5

   i.  "In-Kind Reclamation Obligation" refers to the obligation by Defendants to support Reclamation Projects pursuant to this Decree.

   j.  "Mammoth Reclamation Area" is the land which is the subject of the initial land donation, as defined in Section VI.

   k.  "Original Consent Decree" shall refer to ECF No. 159 entered in this action by the Court on February 2, 2015.

   l.  "Outfall" or "Outlet" shall mean the following WV/NPDES-permitted discharge points: WV1003968 Outfalls 001, 002, 003, 004, and 017; WV1013441 Outfalls 001, 002, 003, 004, 005, 006, 007, and 019; WV1015362 Outfalls 001, 002, and 003; and WV1012401 Outfalls 004 and 007;

   m.  "Paragraph" shall mean a portion of this Second Amended Consent Decree identified by an Arabic numeral;

   n.  "Parties" shall mean Plaintiffs and Defendants;

   o.  "Permit Application"  shall mean an application for permit modification or bond release on a permitted site chosen for a Reclamation Project, as described in paragraph 31.

   p.  "Permit Obligations" shall mean obligations pursuant a WV/NPDES or SMCRA permit and/or any other obligations imposed by federal, state, or local regulators.

   q.  "Permits" shall mean WV/NPDES Permit Nos. WV1003968, WV1013441, WV1015362, and WV1012401;

   r.  "Piney Creek Donation Area" shall mean the land described in paragraph 25 and shown on Exhibit B to this decree.

   s.  "Plaintiffs" shall mean Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Inc., and Sierra Club;

t.     "Reclamation Projects" shall mean the projects described in Section V of this Second Amended Consent Decree.

u.     "Section" shall mean a portion of this Second Amended Consent Decree identified by a Roman numeral;

v.     "Second Amended Consent Decree" or "Decree" shall mean this document and any exhibits, attachments, or appendices thereto.

w.     "Settlement Agreement of June 30, 2016" shall mean the agreement executed by the Parties on or about June 30, 2016 and attached as Appendix B to the First Amended Consent Decree, which sets forth the consideration for the submission of the proposed modifications and for the modifications themselves.

x.     "SMCRA" shall mean the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201, *et seq.*;

y.     "USEPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

z.     "Valley Fill" shall refer to any area currently or formerly permitted and constructed, as a "valley fill," "durable rock fill," or "refuse disposal area." The term shall refer to the face, deck, interior, toe, and any water or pollutant discharge point from such structure.

aa.     "WVDEP" shall mean the West Virginia Department of Environmental Protection; and

bb.     "WV/NPDES permit" shall mean a West Virginia / National Pollutant Discharge Elimination System permit issued by WVDEP pursuant to Section 402 of the CWA.

## V.  MINED LAND RECLAMATION PROJECTS

18.     Plaintiffs shall not seek any remedies or penalties under the CWA or SMCRA for violations of WV/NPDES permit effluent limits or narrative water quality

standards associated with discharges of sulfates, TDS, ionic pollution, or elevated conductivity at the affected Outfalls so long as this Second Amended Consent Decree is in effect, nor shall Plaintiffs seek any such remedies or penalties after the mined land reclamation restoration and reclamation projects described in this Section V are completed.

19.   To improve water quality and offset environmental degradation resulting from Defendants' CWA violations, and other impacts from coal-mining, the parties agree to pursue mined land restoration and reclamation projects in the region.   These Reclamation Projects are further explained below.

20.   To achieve the above-stated goals the parties agree to the following:

a.   Defendants will make payments to Appalachian Headwaters of $2,250,000 within 30 days of the entrance of this Second Amended Consent Decree. Subsequent payment of $2,250,000 shall be made on the first of July 2019, 2020, and 2021. In the event of a merger, acquisition, or other transaction that results in Defendants having a new ultimate parent company prior to July 1, 2020, then the schedule above shall be modified.  In such circumstances, $250,000 shall be paid within 30 days of such merger or acquisition or other transaction and $750,000 shall be added to the next scheduled annual payment.  To offset the accelerated payment, $1,000,000 shall be deducted from the July 1, 2021 annual payment.  This acceleration of payments shall only occur one time.

b.  Appalachian Headwaters shall use the funds paid under this Paragraph (the "Funds") for the following purposes:

1.  to design Reclamation Projects, discussed below;

2. to manage, and pay for Reclamation Projects, produce and buy materials for the projects, general support for the organization, to seek additional funds for water and land reclamation, to obtain timber or timber rights in support of Reclamation Projects, and for environmental education in the Kanawha River watershed; and

3. to pay expert consultants to help design, implement and monitor those projects.

The Funds shall not be used to support litigation related to coal mining and/or related activities.

21. Reclamation Projects. Plaintiffs have designated Appalachian Headwaters to act on their behalf to design and implement Reclamation Projects, as defined in this Decree. Appalachian Headwaters and Defendants shall identify locations (a) on permits and property held by Defendants and their affiliates and/or (b) on permits and property controlled by a party other than the Defendants or their affiliates if such party has agreed in writing to allow its locations to be evaluated by the Parties for projects to test new or innovative reclamation and/or stream mitigation techniques developed by Appalachian Headwaters (the "Experimental Practice Projects") and to implement enhanced reclamation plans designed or approved by Appalachian Headwaters (the "Enhanced Reclamation Projects" and together with the Experimental Practice Project the "Reclamation Projects"). The Reclamation Projects shall have a goal of returning streams and the land to a natural and well-functioning forest ecosystem and reducing conductivity in nearby streams, while simultaneously also allowing for environmentally sustainable recreation and commercial activities.

a.  In-Kind Reclamation Obligation.  Defendants agree to expend $12.0 million during the 4 years after the Effective Date of this Second Amended Consent Decree on the Reclamation Projects identified and agreed to by the Parties and Appalachian Headwaters.

b.  Credit against the In-Kind Reclamation Obligation shall include Defendant's actual costs (i.e. Defendant shall not make any profit) associated with labor, materials, equipment, consultants, contractors, or other mutually agreed upon expense(s) associated with the Reclamation Projects.  Any money spent on those items will be credited in the amount of the cash payment.  Services provided by Defendants and their affiliates. (e.g. machine operation, labor by Alpha employees, or design time by ANR staff) will be credited against the In-Kind Reclamation Obligation  and Defendants  shall provide detailed quarterly documentation of expenditures to Appalachian Headwaters showing the costs and market value of each activity.

c.  Credit against the In-Kind Reclamation Obligation may also include the value of any land transferred to a non-profit of Appalachian Headwaters' choosing, subject to the following conditions:

1.  Appalachian Headwaters and Defendants will mutually select an appraiser to value any such land that is designated for donation and such appraisal shall establish the fair market value of the land, as if sold on the open market in an arms-length transaction.  Credit will be equal to the appraised value, except for the donation of the Mammoth Reclamation Area, which will be credited no more than $3,540,000.

2.  Defendants shall have the opportunity to propose to donate land in satisfaction of the In-Kind Reclamation Obligation at any point during the agreement.

10

Plaintiffs are under no obligation to accept any such proposed donation.  Any such land donation after the Mammoth Reclamation Area will be valued at market value and will not be subject to the $3,540,000 cap set forth above. Appalachian Headwaters may reject any such proposal.

    d. Project Priority.  Priority for the Reclamation Projects shall be as follows, in descending order of priority:

     1. Restoration of the Mammoth Reclamation Area as described in Section VI, below.

     2. Poorly reclaimed grass or shrub land where conductivity in nearby streams receiving runoff/discharge is above 1000 µS/cm.

     3. Riparian areas.

     4. Land where reclamation is ongoing, but Plaintiffs believe conductivity levels can be improved.

    e. Project Selection.  Plaintiffs, or Appalachian Headwaters on behalf of the Plaintiffs, and Defendants shall meet at least quarterly to select sites for the Reclamation Projects, review the status of design or permitting work on the Reclamation Projects that have not yet commenced, and/or discuss progress on ongoing Reclamation Projects.

    f. Unmet Reclamation Obligation.  If, despite the Parties' best efforts, appropriate Reclamation Projects cannot be identified or if services and/or payments for the In-Kind Reclamation Obligation do not meet the $12 million specified above for any reason as of January 31, 2022, the balance remaining on the In-Kind Reclamation Obligation as of that date will be paid to Appalachian Headwaters in four equal

installments due January 31, 2022, April 30, 2022, July 31, 2022, and September 30, 2022 (the "Reclamation Make Whole Payments"). For the avoidance of doubt, if any Reclamation Projects remain underway as of January 31, 2022 and the Parties agree (in writing) to continue with such projects, then the amount projected to be expended shall be reserved from the Reclamation Make Whole Payments until the projects are completed, with a final payment of any unexpended funds to Appalachian Headwaters occurring within 30 days of project completion. The funds provided through any Reclamation Make Whole Payments will be used and expended as set forth in Paragraph 20.b. above.

22. Where any compliance obligation under this Section requires Defendants to obtain a federal, state or local permit or approval, Defendants shall submit timely and substantially complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section X of this Second Amended Consent Decree ("Force Majeure") for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and substantially complete applications and have taken all other actions necessary to obtain all such permits or approvals.

23. The Parties agree that they will not file any notice of intent to sue, formal comment to an administrative agency, appeal of a regulatory action, or lawsuit with a regulatory body or court regarding any site that is the subject of a Reclamation Project during or after the completion of said project. If Defendants believe that any Plaintiff has taken any such action in violation of this paragraph, Defendant shall provide written

notice of the alleged breach to that Plaintiff, through counsel, and allow that Plaintiff 30 days to cure the breach by withdrawing or disavowing the action.  Specific performance, rather than monetary or other damages, shall be the remedy for any breach of this provision.

## VI.  INITIAL LAND DONATION

24.   Within 90 days of the Effective Date of this Second Amended Consent Decree, Defendants shall cause their affiliate Boone East Development Co., LCC to transfer title to the Mammoth Reclamation Area and the Piney Creek Donation Area, in fee simple to Appalachian Headwaters or another non-profit organization of its choosing.  Transfer shall be in the form of a general warranty deed.

25.   The Mammoth Reclamation Area is located in eastern Kanawha County with tributaries that flow into the Kanawha River.  The property consists of approximately 4,800 contiguous acres and includes a mixture of land that has been previously mined using both surface and underground mining methods, as well as areas that have not been mined in any widespread or planned manner.  Defendants do not hold the timber rights for approximately 1,200 acres of the Mammoth Reclamation Area, but will use commercially reasonable efforts to acquire these rights; if ANR cannot acquire these timber rights within 90 days of this Second Modification being approved by the Court, Defendants will pay Appalachian Headwaters the appraised value of the timber rights, up to an agreed-upon cap. Any Valley Fills within the borders of the Mammoth Reclamation Area are expressly reserved from the Mammoth Reclamation Area.  Exhibit A is a map of the Mammoth Reclamation Area and a legal description of the Mammoth Reclamation Area will be created by Defendants and submitted to the Plaintiffs for review and comment within 3 business days of this Second Modification being approved by the Court or by September 30,

13

2018, whichever first occurs.  The Piney Creek Donation Area consists of two parcels of approximately 550 acres in the aggregate located adjacent to Piney Creek in Raleigh County near the New River Gorge National River with no SMCRA or WV/NPDES permits of any kind.  Exhibit B is a map of the Piney Creek Donation Area and a legal description of the Piney Creek Donation Area will be created by Defendants and submitted to Plaintiffs for review and comment within 3 business days of this Second Modification being approved by the Court or by September 30, 2018, whichever first occurs.

26.     Defendants and/or the current operator at any permitted site within the Mammoth Reclamation area shall retain responsibility for meeting any remaining Permit Obligations for mining, reclamation, or other activities that are currently being or have been conducted on the land within the Mammoth Reclamation Area.  Plaintiffs will allow Defendants access to the Mammoth Reclamation Area to meet any such Permit Obligations and will not unreasonably interfere with Defendants' activities in this regard.  Plaintiffs will also allow Defendants and/or their affiliates reasonable entry as necessary on the Piney Run property, provided that Defendants and/or their affiliates provide reasonable notice.

27.     Defendants shall retain ownership of any Valley Fills or refuse disposal areas and outfalls within the Mammoth Reclamation Area.  Defendants, however, shall generally allow Appalachian Headwaters, its employees, contractors, consultants or other designees, right of entry to conduct reclamation and restoration work at these locations.  Defendants agree that in the future these areas within the Mammoth Reclamation Areas shall be used only for activities consistent with the Mined Land Reclamation Projects described in this Decree.  No timbering, mineral extraction, or industrial activity shall be allowed without the express written consent of Appalachian Headwaters.  The Parties agree that no reclamation or restoration work at these

14

locations shall occur if Defendants conclude, using their best professional judgment, that such work could adversely impact the stability of a Valley Fill.

28. Defendants hereby state that they know of no acid mine drainage or hazardous substances, including but not limited to polychlorinated biphenyl contaminated material-currently existing on the Mammoth Reclamation Area.

29. Prior to the transfer of the title for the Mammoth Reclamation Area and the Piney Creek Donation Area, Defendants shall terminate the existing grazing lease on the property and any other lease or agreement that allows for a post-mining land use inconsistent with the use of the property as a Reclamation Project described in Section V of this Decree.

Additionally, prior to transfer of title Appalachian Headwaters shall have the opportunity to complete a Phase I Environmental Site Assessment on the land to be transferred and to refuse title if the Assessment reveals significant environmental liability associated with the site. In such case, the land credit of up to $3.54 million dollars shall, upon agreement of the Parties, be applied to another parcel or parcels transferred to a non-profit of Appalachian Headwaters choosing pursuant to Paragraph 21 herein.

## VII. NOTIFICATION AND REVIEW OF PERMIT MODIFICATIONS AND BOND RELEASE

30. Defendants agree that any permit modification and/or request for bond release on any permitted site chosen for a Reclamation Project must be consistent with the goals of the Reclamation Project, namely to reforest the area and to reduce conductivity in nearby streams; provided that, if any permitted area is within 1 year of achieving final bond and permit release, the Defendants and their affiliates may proceed to achieve such final bond and permit release. In such an instance, the Defendants and their affiliates

15

shall then re-permit any land work under non-coal mining permitting requirements of the WVDEP.

31.     Defendants agree to provide Plaintiffs with a copy of any application for permit modification or bond release ("Permit Application") on any permitted site chosen for a Reclamation Project.  Plaintiffs shall have twenty-one (21) days after receipt to review the application to confirm that it does not materially conflict with the goals of this Second Amended Consent Decree.  If Plaintiffs contend that there is such conflict they shall provide written notice to Defendants of a) the respect to which the Permit Application conflicts with the goals of this Decree; and b) proposed alternative language or action to resolve such a conflict.  Defendants agree that in the event of such notice, they will refrain from submitting the Permit Application to the relevant legal authority until the conflict is resolved.  If the Parties cannot resolve the conflict within thirty (30) days of notice by Plaintiffs, any party may submit the matter to this Court or to an agreed upon Mediator for resolution.  Plaintiffs agree that their consent to any Permit Application may not be unreasonably withheld.

32.  Defendants agree that they will not make or agree to any material alteration of a Permit Application without providing notice to Plaintiffs.  In such event Plaintiffs shall have fourteen (14) days to review the proposed alteration to the Permit Application.  If Plaintiffs contend that the alteration to the Permit Application will cause a material conflict with the goals of this Second Amended Consent Decree they shall provide specific written notice to Defendants of a) the respect to which the alteration conflicts with the goals of this Decree; and b) the proposed alternative language or action to resolve

16

such conflict.  If the parties cannot resolve the conflict within ten (10) days, any party may submit the matter to this Court or to an agreed upon Mediator for resolution.

## VIII.  EFFECT OF BANKRUPTCY

33.   The undersigned agree that obligations within the Second Amended Consent Decree are not dischargeable through bankruptcy, and Defendants agree not to seek such a discharge and will join Plaintiffs in efforts to avoid any such a discharge.

## IX.  PARENT COMPANY GUARANTY

34.   The ultimate parent company of the Defendants, in this case ANR, Inc. shall provide a parent company Guaranty, in the form attached hereto as Exhibit C, for the full amount of the Funds and for any payments or value of the In-Kind Reclamation Obligation that remain outstanding at any given time.   This Guaranty shall be effective on the Effective Date of this Second Amended Consent Decree, and shall be submitted within three days of the entrance of this Second Amended Consent Decree.   The Parties shall adjust the written amount set forth in the parent company guaranty at least annually to reflect payments of Funds and the value of the In-Kind Reclamation; provided that, the parent company guaranty shall never exceed the amount of Funds that remain to be paid plus the value of the In-Kind Reclamation Obligations that remain to be performed.   In the event of a merger, stock sale, or other transaction whereby a new entity shall become the Defendants' ultimate parent company, Defendants agree that they shall cause such new ultimate parent company to provide a parent company guaranty in the same form as that provided by ANR within thirty days of the closing of such merger, stock sale or other transaction. If Defendants fail to secure the required parent company guaranty from the new owner, all obligations then remaining shall be accelerated such that any remaining cash payment and the

remaining value of the In-Kind Reclamation Obligation shall be paid in full within forty-five days of the closing of the merger.

## X.  FORCE MAJEURE

35.  "Force Majeure," for purposes of this Second Amended Consent Decree, is defined as any event arising from causes beyond the reasonable control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, which delays or prevents the performance of any obligation under this Second Amended Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Second Amended Consent Decree.

36.  If any event occurs or has occurred that may delay the performance of any obligation under this Second Amended Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to Plaintiffs within five business (5) days of when Defendants first knew that the event might cause a delay. Within 14 days thereafter, Defendants shall provide in writing to Plaintiffs an explanation of the reasons for the delay; the anticipated duration of the delay; and actions taken or to be taken to prevent or minimize the delay.

37.  If Plaintiffs agree that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Second Amended Consent Decree that are affected by the Force Majeure event will be extended by Plaintiffs for such time as is necessary to complete those obligations.  An extension of the time for performance of the

obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. Plaintiffs will notify Defendants in writing within 5 business days of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

38.     If Plaintiffs do not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, Plaintiffs will notify Defendants in writing of its decision with five (5) days of its receipt of the Force Majeure claim by Defendants. Any dispute between the Parties over a Force Majeure claim may be resolved by the Court.

## XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

39.     This Second Amended Consent Decree, along with the Original Consent Decree, and First Amended Consent Decree resolve the civil claims of Plaintiffs for the violations alleged in the Complaint in this action, filed on March 20, 2012, and those that occur through the date of termination of this Second Amended Consent Decree.   Plaintiffs shall comply with the provisions of Paragraph 18 herein.

40.     The terms of this Second Amended Consent Decree supersede the terms of the Original Consent Decree and the First Amended Consent Decree, except that the obligations of Plaintiffs, Defendants', and Defendants' parent company set forth in Paragraphs 4 and 6 through 11, inclusive, of the Settlement Agreement of June 30, 2016  ("Outstanding Obligations") shall remain in effect.  The Parties agree that: any compliance dates for the design, construction and implementation of treatment technology at outfalls on Defendants permits; and any requirement to meet permit limits are not Outstanding Obligations under the June 30, 2016 Settlement Agreement and are not enforceable under that Agreement or this Second Amended Consent Decree.

41.   The Parties agree that this Second Amended Consent Decree relieves Defendants from obligations to design, and implement treatment technology at the outfalls listed herein, that were incurred as a result of the Original Consent Decree and the First Amended Consent Decree.

42.   The Parties agree to the dismissal of Plaintiffs' claims regarding Outfall 001 under WV/NPDES Permit WV1019601 with prejudice as to violations through the Effective Date of the Original Consent Decree because the outfall has yet to be built and, thus, cannot be in violation.

43.   This agreement does not represent an admission of liability by Defendants.  Further, Defendants do not concede that the legal theory advanced by Plaintiffs in this case is correct and applicable at other sites.  Defendants and/or their affiliate companies reserve all rights to oppose Plaintiffs' legal theory in other cases.

44.   This Second Amended Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Decree.

## XII. COSTS AND FEES

45.   As required pursuant to Paragraphs 42 and 43 of the Original Consent Decree, and in accordance with the fee shifting provisions of the CWA and SMCRA, Defendants timely paid reasonable costs and attorneys' fees, including expert witness fees and costs incurred by Plaintiffs in conjunction with this civil action through the Effective Date of the Original Consent Decree in the amount of $493,967.58.

46.   The sum delivered under Paragraphs 42 and 43 of the Original Consent Decree constituted a complete settlement of Plaintiffs' claims for costs and fees incurred up to the Effective Date of the Original Consent Decree, and thereafter for responding to possible comments on the Original Consent Decree by the Department of Justice.

47.   Defendants shall pay Plaintiffs' reasonable fees and costs for their work related to proceedings to interpret or enforce the terms of the Second Amended Consent Decree or the

Settlement Agreement of June 30, 2016.  Defendants shall also pay Plaintiffs' reasonable fees and costs for their work in negotiating and drafting the Second Amended Consent Decree.  The fees and costs described in this paragraph may not exceed $40,000.

## XIII.  NOTICES

48.     Unless otherwise specified herein, whenever notifications, submissions, reports or communications are required by this Second Amended Consent Decree, they shall be made in writing and addressed as follows:

To Plaintiffs:

Mike Becher
Appalachian Mountain Advocates
P.O. 11571
Charleston, WV 25339

To Defendants:

Legal Department
Alpha Natural Resources Services, LLC
300 Running Right Way
Julian, WV 25529

And

Executive Vice President & General Counsel
Alpha Natural Resources
One Alpha Place
P.O. Box 16429
Bristol, VA 24209

49.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

50.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Second Amended Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

51.    The Effective Date of this Second Amended Consent Decree shall be the date upon which this Second Amended Consent Decree is entered by the Court or a motion to enter this Second Amended Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.   RETENTION OF JURISDICTION

52.    The Court shall retain jurisdiction over this case until termination of this Second Amended Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section XVI ("Modification") or effectuating or enforcing compliance with the terms of this Decree.

53.   The Parties agree and consent to this Court's jurisdiction to enforce or to resolve disputes arising under the Settlement Agreement of June 30, 2016  as to the Parties to this action. The obligations of Plaintiffs, Defendants, and Defendants' parent company set forth in Paragraphs 4 and 6 through 11, inclusive, of the Settlement Agreement of June 30, 2016 are hereby incorporated into this Second Amended Consent Decree by reference, as if fully set forth herein.

54.    Except as explicitly provided herein, Plaintiffs and Defendants reserve all legal and equitable rights and defenses available to them to enforce or defend the provisions of this Second Amended Consent Decree.

## XVI.   MODIFICATION

55.    The terms of this Second Amended Consent Decree, including the attached appendices, may be modified only by a subsequent written agreement signed by all Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

## XVII.   TERMINATION

56.     The Second Amended Consent Decree shall terminate when:  all the Funds have been paid; the In-Kind Reclamation Obligation has been satisfied; and all Reclamation Projects have been are completed.

## XVIII.  SIGNATORIES/SERVICE

57.     Each undersigned representative of Plaintiffs and Defendants certifies that he or she is fully authorized to enter into the terms and conditions of this Second Amended Consent Decree and to execute and legally bind the Party he or she represents to this document.

58.     This Second Amended Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

## XIX.  INTEGRATION

59.     This Second Amended Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Second Amended Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Second Amended Consent Decree, no other document, nor any representation, inducement, agreement, understanding or promise, constitutes any part of this Second Amended Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Second Amended Consent Decree.

## XX.  FINAL JUDGMENT

60.     Upon approval and entry of this Second Amended Consent Decree by the Court, this Second Amended Consent Decree shall constitute a final judgment of the Court as to Plaintiffs and Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

ENTER: _____, 2018


_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE


For the Plaintiffs Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Inc., and Sierra Club


/s/ _____          Dated: 8/17/18
JOSEPH M. LOVETT (WV Bar No. 6926)
J. MICHAEL BECHER (WV Bar No. 10588)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
304-793-9007


For the Defendants Elk Run Coal Company, Inc. and Alex Energy, Inc.


/s/ *M. Shane Harvey* by CMH          Dated: 8/17/18
M. SHANE HARVEY, WVBN 6604 *w/permission*
JACKSON KELLY PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
304-340-1006

Exhibit
A



Proposed Revision to Boundary

Proposed Conservation Area
Version 2  ~4800 ac

S303790

S301491

S004577

S000684

S008379

**Alpha** Natural Resources

Mammoth Proposed Conservation Area
Legend

Proposed Conservation Area, Approx. 4,800 ac

ANR SMA Permits

Timber Exclusion Area 1991 Deed to PLC

SCALE - 1 in = 4,000 ft
WV South State Plane NAD 27
03/20/2018

Exhibit

B



41-11-22-0011-0000-0000
Fee Tract #1 Piney View (32.459ac)

41-11-22-0005-0000-0000
Sur 107.8 Piney L & C Co
Min 325 Ac WTS Piney River

41-11-23-0014-0000-0000
Sur 433.65 Ac (C) PT TRS 16F-17F

41-11-23-0021-0000-0000
Sur 10.58 AC NR Cranberry Br
Min 10.58 Acs Ex O&G Little Whitestick

**Property Legend**

Surface, All Coal and Oil and Gas Owned

Surface Only Owned, Mineral and Oil and Gas Owned by Successor of The New River Company

Surface and All Coal Owned Except Sewell & Beckley, Oil and Gas Owned by Successor of The New River Company

| DRAWN | |
|---|---|
| DATE | NAME |
| REVISED | |
| 8-16-18 | TRM |

**BOONE EAST**
DEVELOPMENT CO.

Map Showing
Property Ownership
Near Piney Creek

| APPROVED | |
|---|---|
| DATE | NAME |

RALEIGH COUNTY , WEST VIRGINIA

| ADDRESS: | | STREET,PO BOX, CITY | |
|---|---|---|---|
| MUNICIPALITY: | TOWNSHIP | DATUM: | NAD 27  WV-SOUTH |
| SCALE : | 1" = 1500FT | DRAWING NO: | NUMBER |

Boone East_Piney Creek Parcels_Raleigh County.dwg | RANGE

# Exhibit C

## PARENT COMPANY GUARANTY

This **GUARANTY** ("Guaranty") is made as of _____, 2018 (the "Effective Date"), by **ANR, Inc,** a Delaware corporation ("Guarantor"), in favor of Ohio Valley Environmental Coalition, West Virginia Highland Conservancy and Sierra Club ("Beneficiaries") in connection with the Second Amended Consent Decree, as entered by the United States District Court for the Southern District of West Virginia (the "Court") in Civil Action 3:12-cv-0785 (the "Order") and the funding obligations thereunder of Elk Run Coal Company, Inc., a West Virginia corporation, and Alex Energy, Inc., a West Virginia corporation (each a "Counterparty").

Recitals

**WHEREAS,** the Guarantor is the ultimate parent company of the Counterparties;

**WHEREAS,** on February 2, 2015, the Court entered the Original Consent Decree in Civil Action 3:12-cv-0785, which resulted in the closure of the case;

**WHEREAS,** on August 3, 2015, Counterparties and its affiliates filed a petition for Bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Proceeding").

**WHEREAS,** on or about May 25, 2016, Counterparties, Guarantor, and other affiliated companies filed the Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession in the Bankruptcy Proceeding;

**WHEREAS,** on June 30, 2016, the Counterparties and Plaintiffs in Civil Action 3:12-cv-0785 ("Plaintiffs") entered into a Settlement Agreement, which provided consideration for the submission of the proposed changes in the First Amended Consent Decree and for the proposed changes themselves. The Settlement Agreement resolved the Plaintiffs' objections to the Plan.

**WHEREAS,** on or about July 12, 2016, the United States Bankruptcy Court for the Eastern District of Virginia entered an order confirming the Plan;

**WHEREAS,** on October 6, 2016, the Court entered the First Amended Consent Decree negotiated by the parties;

**WHEREAS,** since the entrance of the First Amended Consent Decree, Counterparties, Guarantor, and Plaintiffs have conferred and negotiated a Second Amended Consent Decree to develop more effective methods of addressing coal mine pollution in the region.

**WHEREAS,** pursuant to the Section IX of the Second Amended Consent Decree, Guarantor has agreed to provide certain credit support to Counterparties;

**WHEREAS,** the Guarantor, Counterparties, and the Plaintiffs in the underlying Civil Action have developed this Guaranty to fulfill and satisfy the Order's requirement that sufficient funds be available to be drawn upon to meet or complete the projects covered by the Order.

<u>Terms and Conditions</u>

**NOW THEREFORE,** in consideration of the premises and the mutual covenants, hereinafter set forth, the adequacy of which is hereby acknowledged, the parties hereto hereby agree as follows:

1.  **Guaranty.**  Guarantor does hereby unconditionally, irrevocably and absolutely guarantee to Beneficiaries the full payment by Counterparties to Beneficiaries under and pursuant to Sections V and VI of the Order (as the same may be amended form time to time) and any related orders issued under and in connection with the Order (the "Related Orders") (referred to herein collectively as "Guaranteed Obligations"). Except as specifically set forth in Section 5 hereof, the total liability of Guarantor under or in connection with this Guaranty, regardless of any amendment, extension, supplement, variation, novation, ratification, replacement or other modification to the Order or any other order or act of the applicable court or other legal authority from time to time, is limited to the lesser of: (a) Twenty-one Million **(US $21,000,000.00)** in cash and in-kind contributions (inclusive of all taxes, levies, imposts, deductions, charges and withholdings assessed, imposed, collected or withheld under any statute and, in each case, all interest, fines, penalties, charges, fees or other amounts in respect of them), or (b) the Guaranteed Obligations, which Guaranteed Obligations are anticipated to be reduced and/or eliminated during the term of this Guaranty as provided for in Paragraph 14 below. Guarantor's obligations and liability under this Guaranty shall be limited to payment obligations only, and Guarantor shall have no obligation to perform under the Order or any Related Orders.

2.  **Guaranty Absolute.**  Guarantor guarantees that the Guaranteed Obligations will be paid strictly in accordance with the terms of the Order and any Related Orders. The obligations of Guarantor under this Guaranty are independent of, but related to, Counterparties' obligations under the Order and the Beneficiaries may seek enforcement of the Guaranty in accordance with Section 9 hereof. The liability of Guarantor under this Guaranty shall be irrevocable, absolute and unconditional.

    Notwithstanding any provision to the contrary contained herein, Guarantor's liability hereunder shall be and is specifically limited to payments expressly required to be made in accordance with the Order and any Related Orders. In no event shall Guarantor be subject hereunder to any consequential, exemplary, equitable, loss profits, punitive, tort or any other damages, costs, or attorney's fees; provided however, that Guarantor may be subject to Beneficiaries reasonable court costs and associated fees if the Beneficiaries properly issues an order for payment under Section 9 hereunder, and Guarantor fails to make such payment.

    This Guaranty shall continue to be effective if a Counterparty merges or consolidates with or into another entity, loses its separate legal identity, ceases to exist, becomes insolvent, or seeks bankruptcy protection.

    This Guaranty is a continuing guaranty of the payment (and not of collection) by Counterparties of their obligations under the Order and any Related Orders. In no event shall Guarantor's liability to Beneficiaries exceed Counterparties' liability under the Order and any Related Orders, notwithstanding the effect of the insolvency, bankruptcy, or reorganization of a Counterparty.

Unless otherwise agreed by Beneficiaries, all payments under this Guaranty shall be made in the same currency that the applicable Guaranteed Obligations are denominated (the "Currency") and in immediately available funds (and no obligation or liability of the Guarantor under this Guaranty shall be released or discharged by any judgment in a currency other than the Currency) unless any judgment or order of the United States District Court for the Southern District of West Virginia is given or made for the payment of any amount due under this Guaranty in a currency other than the Currency.

3.     **Term.**  This Guaranty shall continue in full force and effect for a period of five (5) years commencing on the Effective Date or until the Counterparties have submitted documentation demonstrating that the Guaranteed Obligations have been satisfied and there is no further need for this Guaranty, whichever occurs first.  Notwithstanding the foregoing, the Guarantor and Beneficiaries may extend this Guaranty by mutual agreement in writing.  Upon expiration of this Guaranty all Guaranteed Obligations shall cease, Guarantor shall be released from this Guaranty.

4.     **Waivers and Acknowledgments.**  Except as expressly provided herein, Guarantor hereby waives presentment, protest, acceleration, dishonor, promptness, diligence, filing of claims with a court in the event of insolvency or bankruptcy of a Counterparty, notice of acceptance of this Guaranty and any other notice with respect to any of the Guaranteed Obligations and this Guaranty. Subject to the provisions of Section 3, Guarantor acknowledges that this Guaranty is continuing in nature and applies to all Guaranteed Obligations, whether existing now or in the future.

Except as to applicable statutes of limitation, no delay of Beneficiaries in the exercise of, or failure to exercise, any rights hereunder shall operate as a waiver of such rights, a waiver of any other rights or a release of Guarantor from any obligations hereunder nor shall any single or partial exercise by Beneficiaries of any right, remedy or power hereunder preclude any other or future exercise of any right, remedy or power. Each and every right, remedy and power hereby granted to Beneficiaries or allowed it by law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Beneficiaries from time to time.

5.     **Reservation of Defenses.**  Guarantor agrees that, except as expressly set forth herein, it will remain bound upon this Guaranty notwithstanding any defenses which, pursuant to the laws of suretyship, would otherwise relieve a guarantor of its obligations under a guaranty. Guarantor does reserve the right to assert defenses which Counterparties may have to payment of any Guaranteed Obligation (but, for the avoidance of doubt, excluding defenses arising from the bankruptcy or insolvency of a Counterparty and other defenses expressly waived hereby).

6.     **Notices.**  All demands, notices, and other communications provided for hereunder shall, unless otherwise specifically provided herein, (a) be in writing addressed to the party receiving the notice at the address set forth below or at such other address as may be designated by written notice, from time to time, to the other party, and (b) be effective upon receipt, when mailed by U.S. mail, registered or certified, return receipt requested, postage prepaid, or personally delivered.  Notices shall be sent to the following addresses:

|  | |
|---|---|
| **If to Guarantor:** | Legal Department<br>Alpha Natural Resources Services, LLC<br>300 Running Right Way<br>Julian, WV 25529 |
| | And |
| | ANR, Inc.<br>Attn: General Counsel<br>636 Shelby Street, 3rd Floor<br>Bristol, TN 37620 |
| **If to Beneficiaries:** | Appalachian Headwaters, Inc.<br>P.O. Box 468<br>Lewisburg, WV 24901<br>(304) 645-9008 |

7. **Demand and Payment.** Any demand by Beneficiaries for payment hereunder shall be in writing, and shall (a) reference this Guaranty, (b) specifically identify Counterparties and Beneficiaries, the Guaranteed Obligations to be paid and the amount of such Guaranteed Obligations, and (c) set forth payment instructions. There are no other requirements of notice, presentment or demand. Upon receipt of a demand that satisfies these conditions, Guarantor shall pay, or cause to be paid, such Guaranteed Obligations within five (5) business days and shall not challenge its obligation to satisfy such demand prior to making such payment.

8. **Payments Free and Clear of Taxes.** All payments by Guarantor hereunder shall be made to the Beneficiaries free and clear of, and without deduction or withholding for, any and all present and future taxes, levies, duties or withholdings of any kind or, if any deduction or withholding for any such taxes, levies, duties or withholdings from any amount payable hereunder is legally required, such amount shall be increased as may be necessary so that after making all required deductions and withholdings, the Beneficiaries will receive an amount equal to the amount it would have received had no such deductions or withholdings been required; provided, however, that in no case shall Guarantor's payments hereunder exceed the cap on Guarantor's total liability hereunder as set forth in Section 1.

9. **Representations and Warranties of Guarantor.** Guarantor represents and warrants that:

(a) it is a corporation duly organized and validly existing under the laws of Delaware and has the corporate power and authority to execute, deliver and carry out the terms and provisions of this Guaranty;

(b)    no authorization, approval, consent or order of, or registration or filing with, any court or other governmental body having jurisdiction over Guarantor is required on the part of Guarantor for the execution and delivery of this Guaranty;

(c)    The undersigned agree that the obligations within this Guaranty are not dischargeable through bankruptcy, and Guarantor agrees not to seek such discharge and will join Beneficiaries in efforts to avoid any such discharge.

(d)    this Guaranty constitutes a valid and legally binding agreement of Guarantor, except as the enforceability of this Guaranty may be limited by the effect of any applicable bankruptcy of Guarantor, insolvency, fraudulent conveyance, reorganization, moratorium or similar laws affecting creditors' rights generally, general principles of equity whether considered in a proceeding in equity or at law, and an implied covenant of good faith and fair dealing, except as expressly provided herein.

**10.**    **Miscellaneous.**

(a)    <u>Assignment.</u> Guarantor shall not assign this Guaranty without the express written consent of Beneficiaries and any purported assignment absent such consent is void.

(b)    <u>Severability.</u> If any provision or portion of a provision of this Guaranty is declared void and/or unenforceable, such provision or portion shall be deemed severed from this Guaranty which shall otherwise remain in full force and effect, with the exception of the amount of Guarantor's liability as provided for in Section 1 above. The parties hereto shall endeavor in good-faith negotiations to replace any invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

(c)    <u>Amendments.</u> No amendment of this Guaranty shall be effective unless in writing and signed by Guarantor and Beneficiaries. No waiver of any provision of this Guaranty nor consent to any departure by Guarantor therefrom shall in any event be effective unless such waiver shall be in writing and signed by Beneficiaries. Any such waiver shall be effective only in the specific instance and for the specific purpose for which it was given.

(d)    <u>Successors and Assigns.</u> This Guaranty shall be binding upon Guarantor, its successors and permitted assigns and inure to the benefit of and be enforceable by Beneficiaries, its successors, and assigns.

(e)    <u>Prior Agreements.</u> This Guaranty embodies the entire agreement and understanding between Guarantor and Beneficiaries relating to the subject matter hereof.

(f)    <u>Headings.</u> The headings in this Guaranty are for purposes of reference only and shall not affect the meaning hereof.

11. **Limitation by Law.**  All rights, remedies and powers provided in this Guaranty may be exercised only to the extent that the exercise thereof does not violate any applicable provision of law, and all the provisions of this Guaranty are intended to be subject to all applicable mandatory provisions of law that may be controlling and to be limited to the extent necessary so that they will not render this Guaranty invalid, unenforceable, in whole or in part, or not entitled to be recorded, registered or filed under the provisions of any applicable law.

12. **Governing Law.**  This Guaranty shall in all respects be governed by and construed in accordance with the laws of the State of Delaware.

13. **Consent to Jurisdiction.**  With respect to the Guaranty and any obligation that the Guarantor may have to the Beneficiaries, Guarantor hereby irrevocably submits to the jurisdiction of the Huntington Division of the United States District Court for the Southern District of West Virginia over any suit, action or proceeding arising out of or relating to the Guaranteed Obligations or Guarantor's obligation to make any payment pursuant to this Guaranty. Guarantor hereby irrevocably waives, to the fullest extent permitted or not prohibited by law, any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in such a court and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum. The parties hereby agree that a final judgment in any such suit, action or proceeding brought in such a court, after all appropriate appeals, shall be binding upon it. This consent to jurisdiction shall not apply to any dispute regarding the Guaranty between Guarantor and any party other than the Beneficiaries.

14. **Amendments to Reflect Annual Reduction in the Guaranteed Obligations.**  The Counterparties and/or Guarantor, as the case may be, may request an amendment to this Guaranty on an annual basis to update Paragraph 1, above, to reflect the amount of the Guaranteed Obligation remaining after giving effect to payments made and in-kind contributions performed under the Consent Decree through the date of the requested amendment.  Such request shall be supported by records and documents required to be submitted to the Beneficiaries pursuant to the Consent Decree.  Beneficiaries consent to the amendment may not be unreasonably withheld.  For the avoidance of doubt, nothing in this paragraph contradicts or supersedes Paragraph 1, above, and at no time shall the Guaranteed Obligations exceed the amount of cash payments and in-kind contributions that Counterparties have yet to satisfy, regardless of whether Guarantor has ever requested an amendment under this paragraph or whether Beneficiaries has consented to such amendment.

**[Signature page to follow.]**

 **IN WITNESS WHEREOF,** Guarantor has caused this Guaranty to be duly executed and delivered by its duly authorized representative and Beneficiaries have acknowledged receipt of this Guaranty.

Guarantor:     **ANR, Inc.**

Name:_____

Title:_____

Date:_____


Beneficiaries: **Ohio Valley Environmental Coalition, West Virginia Highland Conservancy and Sierra Club**


Name:_____

Title:_____

Date:_____