IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL COALITION,
WEST VIRGINIA HIGHLANDS CONSERVANCY and
SIERRA CLUB,

            Plaintiffs,

v.                                                     CIVIL ACTION NO. 3:12-0785

ELK RUN COAL COMPANY, INC. and
ALEX ENERGY, INC.,

            Defendants.

**ORDER**

Pending before the Court is a joint motion to modify the Amended Consent Decree approved by the Court on October 4, 2016, ECF No. 163. ECF No. 164. The original Consent Decree ("Consent Decree"), ECF No. 159, was intended to address Defendants' violations of their West Virginia/National Discharge Elimination System permits ("WV/NPDES"). On August 3, 2015, Defendants filed for Chapter 11 bankruptcy. Plaintiffs subsequently objected to Defendants' Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession. On June 30, 2016, the parties entered into a settlement agreement to resolve Plaintiffs' objections and Parties agreed that the bankruptcy process and Defendants' financial situation make it impossible for Defendants to meet the obligations imposed by the original Consent Decree. The parties, and the Court, accordingly agreed to a modification that would delay deadlines imposed by the Consent Decree by three years, and in exchange Defendants would, among other things, fund forest and stream restoration in West Virginia, donate the Rostraver Reserve to a non-profit that would

preclude any coal extraction on the Reserve, and sterilize fifty-three million tons of coal. Since the entering of the Amended Consent Decree, Parties have conferred and renegotiated terms to develop more effective methods addressing coal mine pollution in the region, resulting in this Second Amended Consent Decree. Upon reaching their agreement, Parties submitted the Second Amended Consent Decree to the Department of Justice for review ("DOJ").

The Clean Water Act ("CWA") requires that:

> No consent decree shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent decree by the Attorney General and the Administrator.

33 U.S.C. § 1365(c)(3). The parties notified the Court on October 15, 2018 that the DOJ reviewed the Second Amended Consent Decree and had no objections to it. ECF No. 165.

The Fourth Circuit Court of Appeals has noted that "a consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 152 (4th Cir. 2002) (quoting *Smyth v. Rivero*, 282 F.3d 268, 279–80 (4th Cir. 2002)); *see also Local No. 93, Int'l Assn. of Firefighters, AFL-CIO v. Cleveland*, 478 U.S. 501, 519 (1986); *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 237 n. 10 (1975) (citation omitted); *Alexander v. Britt*, 89 F.3d 194, 199 (4th Cir. 1996).

Because it is entered as an order of the court, the terms of a consent decree must also be examined by the court.

> Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree

that violates [sic] Constitution, statute, or jurisprudence.

664 F.2d at 441 (Rubin, J., concurring). In other words, a court entering a consent decree must examine its terms to ensure they are fair and not unlawful. *Smyth*, 282 F.3d at 280.

The Fourth Circuit has further explained:

> In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged. *See Durrett v. Housing Authority of City of Providence*, 896 F.2d 600, 604 (1st Cir.1990). Nevertheless, a district court should not blindly accept the terms of a proposed settlement. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975). Rather, before entering a consent decree the court must satisfy itself that the agreement "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991). In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case. *See Flinn*, 528 F.2d at 1172–73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision." *Id.* (internal quotation marks omitted). In particular, the "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." *Carson v. American Brands, Inc.*, 606 F.2d 420, 430 (4th Cir.1979) (en banc) (Winter, Circuit Judge, dissenting), *adopted by Carson v. American Brands, Inc.*, 654 F.2d 300, 301 (4th Cir.1981) (en banc)(per curiam).

*United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999).

This Court is also empowered to modify a consent decree. "It has long been recognized that courts are vested with the inherent power to modify injunctions they have issued. That same authority also exists with regard to a court's consent decrees, which regulate future conduct and thus operate as injunctions." *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825-26 (4th Cir. 2005) (citing *United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932)). That inherent power has been formalized in Rule 60(b)(5) of the Federal Rules of Civil Procedure. *Id.* at 826.

> [A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meet this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstances.

*Rufo v. Inmates of Suffolk Cty*, 502 U.S. 367, 383 (1992).

Here, Parties have agreed that material modifications to the Amended Consent Decree must be approved by the Court. According to the Consent Decree, the parties may modify the decree only upon a subsequent written agreement by all parties, and where the modification is material, the modification will only become effective by approval of this Court. Consent Decree ¶ 51, Feb. 2, 2015, ECF No. 159-1.

Here, the Second Amended Consent Decree restructures the methods and terms of termination of the Amended Consent Decree. Previously, the Amended Consent Decree listed an end goal that either (1) each listed Outfall achieves a discharge effluent with levels at or below 300 μS/cm for six consecutive months; or, (2) the Defendants achieve a Passing GLIMPSS Score. ECF No. 163, ¶58. Instead, the Second Amended Consent Decree sets termination of goals of (1) structured payment totaling $9,000,000 to Appalachian Headwaters, (2) In-Kind Reclamation Obligations of $12,000,000, including the donation of the Mammoth Reclamation Area and the Piney Creek Donation Area, and (3) the completion of all reclamation projects as identified by Appalachian Headwaters and Defendants. ECF No. 164-1, at ¶¶ 20, 21, 24, 56. Parties believe that the expanded use of an intermediary, through a structured payment plan, constitutes a more effective plan to address coal mine pollution in the region. *Id.*, at ¶10.

The Court recognizes Defendants' bankruptcy created limitations that necessitated a modification of the Consent Decree. In a continued effort to respond to changing circumstances of a bankrupt party, the Court finds this Second Amended Decree provides more definitive costs for

the goals laid out by Parties. However, this Court notes that the ultimate goal is to rectify the damage caused by Defendants, rather than just doing as many repairs as they can do within a set amount. Still, the Court agrees with Parties that this Second Amended Consent Decree represents the best plan within the economic realities of the instant case.

In a letter from Appalachian Headwaters to DOJ, Appalachian Headwaters confirmed that any funds received through the Modified Consent Decree would be used solely for the reclamation projects noted in the Second Amended Consent Decree. ECF No. 165. As with the Amended Consent Decree, the Court believes these funds will further the purposes of the CWA in the same area that is at issue in Defendants' NPDES permits. The Court similarly finds that the preservation of land through the donation of the Mammoth Reclamation Area and the Piney Creek Donation Area will further the purposes of the CWA.

In sum, the Court **FINDS** the change in circumstances from the bankruptcy warrants a second modification of the existing amended consent decree. Moreover, the Court **FINDS** the new agreement adequately addresses the harms intended to be addressed in the original and amended decrees and furthers the purpose of the CWA.

ENTER: November 6, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE